| District Court Adams County, Colorado<br>Court Address:<br><br>Plaintiff(s): Derrick Loray Tadlock, Cheryl Marie Tadlock<br>v.<br>Defendant(s): Wells Fargo Bank NA, F. Michael Goodbee, John G Stumpf, Fannie Mae, Joan olson, Holly Shilliday et al | FILED IN ADAMS COUNTY COMBINED COURT<br>JAN 04 2016<br>DATE FILED: January 4, 2016<br>CASE NUMBER: 2016CV1<br><br>▲ COURT USE ONLY ▲ |
|---|---|
| Attorney or Party Without Attorney (Name and Address):<br><br>Phone Number: E-mail:<br>FAX Number: Atty. Reg. #: | Case Number:<br>16CV0001<br><br>Division Courtroom |

**DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT**

1. **This cover sheet shall be filed with each pleading containing an initial claim for relief in every district court civil (CV) case, and shall be served on all parties along with the pleading.** It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

2. **Check one of the following:**

☐ This case is governed by C.R.C.P. 16.1 because:

- The case is not a class action, domestic relations case, juvenile case, mental health case, probate case, water law case, forcible entry and detainer, C.R.C.P. 106, C.R.C.P. 120, or other similar expedited proceeding; *AND*

- A monetary judgment over $100,000 is not sought by any party against any other single party. This amount includes attorney fees, penalties, and punitive damages; it excludes interest and costs, as well as the value of any equitable relief sought.

☒ This case is not governed by C.R.C.P. 16.1 because (check ALL boxes that apply):

☐ The case is a class action, domestic relations case, juvenile case, mental health case, probate case, water law case, forcible entry and detainer, C.R.C.P. 106, C.R.C.P. 120, or other similar expedited proceeding.

☒ A monetary judgment over $100,000 is sought by any party against any other single party. This amount includes attorney fees, penalties, and punitive damages; it excludes interest and costs, as well as the value of any equitable relief sought. Law of the case explains.

☐ Another party has previously indicated in a Case Cover Sheet that the simplified procedure under C.R.C.P. 16.1 does not apply to the case.

*NOTE: In any case to which C.R.C.P. 16.1 does not apply, the parties may elect to use the simplified procedure by separately filing a Stipulation to be governed by the rule within 49 days of the at-issue date. See C.R.C.P. 16.1(e). In any case to which C.R.C.P. 16.1 applies, the parties may opt out of the rule by separately filing a Notice to Elect Exclusion (JDF 602) within 35 days of the at-issue date. See C.R.C.P. 16.1(d).*


©2013, 2014, 2015 Colorado Judicial Department for use in the Courts of Colorado

EXHIBIT A

☐A Stipulation or Notice with respect to C.R.C.P. 16.1 has been separately filed with the Court, indicating:

☐C.R.C.P. 16.1 applies to this case.

☐C.R.C.P. 16.1 does not apply to this case.

3. ☐This party makes a **Jury Demand** at this time and pays the requisite fee. *See* C.R.C.P. 38. (Checking this box is optional.)

Date: 1/4/2016

Signature of Party or Attorney for Party


©2013, 2014, 2015 Colorado Judicial Department for use in the Courts of Colorado

EXHIBIT A

**DISTRICT COURT OF RECORD**

**ADAMS COUNTY, COLORADO**

| | | |
|---|---|---|
| *DERRICK LEROY TADLOCK* | § | |
| CHERYL MARIE TADLOCK | § | |
| Counterclaimants | § | |
| v. | § | CASE # |
| WELLS FARGO BANK NA | § | |
| DISTRICT COURT ADAMS COUNTY | § | |
| COUNTY OF ADAMS | § | |
| PUBLIC TRUSTEE OF ADAMS COUNTY | § | |
| STATE OF COLORADO | § | |
| FANNIE MAE | § | |
| JOHN G STUMPF | § | Counterclaim for Trespass |
| JEFF SHOMION | § | Counterclaim for Trespass |
| PATRICK SIMONIS | § | On the Case |
| LEESA WHITT-POTTER | § | |
| JOAN OLSON | § | |
| HOLLY SHILLIDAY | § | |
| ERIN ROBSON | § | |
| COURTNEY WRIGHT | § | |
| JENNIFER CRUSETURNER | § | |
| SUSAN LEMOINE | § | |
| FREDERICK MICHAEL GOODBEE | § | |
| SUZANNE FREDICKSON | § | |
| SUSAN A ORECCHIO | § | |
| WITNESS JANE DOE | § | |
| Counterdefendants | § | |



EXHIBIT A

**FIRST CAUSE OF ACTION – TRESPASS**

PARTIES

1. Comes now, Derrick Leroy Tadlock and Cheryl Marie Tadlock, ("Tadlock") a people of Colorado, *hereinafter counterclaimants, in this court of record and complains of each of the following:* State of Colorado, a corporation; County of Adams, a corporation; District Court, ("inferior court"); Adams County, a corporation; Adams County Public Trustee, a corporation; Wells Fargo Bank NA, "Wells Fargo", a corporation; Fannie Mae, a corporation; Frederick Michael Goodbee ("Goodbee"); Suzanne Fredrickson, ("Fredrickson"); Susan A, Orecchio, ("Orecchio"); John G Stumpf, ("Stumpf"); Jeff Shomion, ("Shomion"); Patrick Simonis, ("Simonis"); Leesa Whitt-Potter, ("Potter"); Holly Shilliday, ("Shilliday"); Joan Olson, ("Olson"); Courtney Wright, ("Wright"); Erin Robson, ("Robson"); Jennifer Cruseturner, ("Cruseturner"); Susan LeMoine, ("LeMoine"); Witness Jane Doe, ("Witness") hereinafter Counterdefendants who are each summoned to answer said action in a plea of trespass and trespass on the case to wit:

INTRODUCTION

2. Each Counterdefendant exceeded its jurisdiction[1] under color of law by either directly, or through an agent, or in concert with another, in an attempt to unlawfully and forcefully extort money from counterclaimants and remove counterclaimants from counterclaimants' domicile and land against counterclaimants' will, without jurisdiction or good cause.
3. As documented herein, Counterdefendants worked in unison to hinder the due process of law to confiscate the land and property of counterclaimants under color of law.

SPECIFICS

4. At all times mentioned in this action, each Counterdefendant is the agent of the other, and in doing the act alleged in this action, each is acting in course and scope of said agency. The following paragraphs describe what the Counterdefendants, under color of law, either acted or failed to act as obligated.
5. Each Counterdefendant exceeded its jurisdiction under color of law. Each Counterdefendant acted in concert with the remaining Counterdefendants to effect the unlawful loss of liberty, due process of law, land and property of counterclaimants.
6. Each Counterdefendant acted in such a way, or failed to act in such a way, that counterclaimants

1 Basso v. Utah Power & Light Co., 495 F 2d 906, 910; Joyce v. US, 474 F2d 215; Bradbury v. Dennis, 310 F.2d 73 (10th Cir. 1962); Rosemond v. Lambert, 469 F2d 416; Latana v. Hopper, 102 F. 2d 188; Melo v. United States, 505 F. 2d 1026 Middleton v. Low (1866), 30 C. 596, citing Prosser v. Secor (1849), 5 Barb.(N.Y) 607, 608; Elliott v Peirsol, 1 Pet. 328, 340, 26 U.S. 328, 340, 7L.Ed. 164 (1828) Rescue Army v. Municipal Court of Los Angeles, 171 P2d 8; 331 US 549, 91 L. ed. 1666, 67 S.Ct. 1409

have been deprived of liberty, reputation, and right of due process of law.

7. Counterdefendant Orecchio sent Counterclaimants a "Combined Notice and Foreclosure Sale[2]" dated May 18th, 2015 claiming a Notice of Election of Demand was filed by Counterdefendant Wells Fargo. Counterdefedant Orecchio claim Counterdefendant Wells Fargo is a holder of a Promissory Note secured by a Deed of Trust claiming Counterclaimants violated a covenant[3] of said Deed of Trust giving Counterdefendant Orecchio the right to demand money from counterclaimants or foreclose on the property on September 16, 2015 under color of law.

8. Counterdefendant Orecchio threatened counterclaimants to pay Counterdefendant Wells Fargo's repurchase agreement or commercial liability owed to Counterdefendant Fannie Mae[4] from securitization misrepresented as an unpaid debt between Counterdefendant Wells Fargo and counterclaimants to extort funds or sell the property under color of law, although Counterdefendants Adams County Public Trustee and Orecchio have no jurisdiction over counterclaimants.

9. Counterdefendant Orecchio is using corporate policy to allow Counterdefendant Wells Fargo an entity who is not an injured party, or a holder in due course, and is not authorized to initiate foreclosure proceedings[5], to use fabricated documents[6] to prove Counterdefendant Wells Fargo owns a debt Counterdefendant Wells Fargo sold its interest in through securitization under color of law.

10. Counterdefendant Orrechio is using a void, paid in full promissory note, secured by an invalid Deed of Trust to extort money and steal land and property from counterclaimants so Counterdefendant Wells Fargo can avoid "being forced to re-purchase loans"[7] without due process under color of law although no money was loaned to counterclaimants.

11. Counterclaimant sent Counterdefendant Orecchio a Cease and Desist Order for lack of jurisdiction and mistaken application of the law. The corporation cannot hinder the right of liberty, property, or due process[8] at any time due the lack of permission from said corporation as it is in excess of said corporation's jurisdiction.

12. Counterdefendant Orecchio under color of law sent a second Combined Notice[9] on or about

---

2 Exhibit L - 1st Combined Notice and Foreclosure Sale
3 Exhibit B - Deed of Trust, Paragraph 1 Borrower's Promise To Pay
4 Exhibit N – Repurchase Agreement is Wells Fargo's liability to Fannie Mae
5 Slorp v Lerner, Sampson, & Rothfuss (6th Circuit Federal Appeals Court "..If the defendants were not authorized to initiate the foreclosure proceedings, Slorp's injuries were caused by their fraud rather than his own alleged default."
6 Exhibit F – Wells Fargo Foreclosure Attorney Procedure Manual pages 2, 17-18, and 20-23 creates endorsements, assignments on demand.
7 Exhibit F – Wells Fargo Foreclosure Attorney Procedure Manual page 4 Risk section
8 *Bank of United States v. Planters' Bank of Georgia*, 22 U.S. 9 Wheat. 904 904 (1824)
9 Exhibit M- 2nd Combined Notice and Foreclosure Sale

August 3, 2015 to sell counterclaimants' property on October 28, 2015.

13. On or about September 22, 2015 Counterdefendant Wells Fargo sent a NOTICE OF RULE 120 HEARING – OCTOBER 20, 2015 AT 8:30 A.M. in an inferior court that does not have jurisdiction to decide the case.
14. Counterclaimants did not consent to the inferior court's jurisdiction by refusing consent of of the Notice of Rule 120 Hearing for inferior court to order a sale of the property.
15. Counterdefendant Goodbee claimed "Respondent" appeared in "person" in an order dated 10/20/2015 to induce counterclaimants in a contested Rule 120 Hearing in the inferior court under color of law.
16. Counterdefendant Goodbee ordered Counterdefendant Fredrickson not to accept anything but a response from counterclaimants in the inferior court in an order dated 10/27/2015 under color of law. Counterclaimant refused Counterdefendant Goodbee and the inferior court's jurisdiction. Counterdefendant Fredrickson returned counterclaimaint's refusal of consent to Counterdefendant Goodbee and the inferior court's jurisdiction.
17. On December 11, 2015 Counterclaimant attended the contested Rule 120 Hearing and at said hearing counterclaimant objected to the jurisdiction of the inferior court and subject matter jurisdiction of Counterclaimant Wells Fargo.
18. Counterdefendants continued the hearing without a judge after jurisdiction was challenged and the corporation did not have counterclaimant's permission to proceed with the hearing under color of law. In so doing, Counterdefendant Goodbee conspired with Counterdefendants as a private man when he ordered authorization of sale under color of law. Counterdefendant Goodbee issued a void[10] order to falsely derive a reason to extort funds and property from two of the people of Colorado, although Counterdefendant Goodbee nor the inferior court has jurisdiction over counterclaimants.

**SECOND CAUSE OF ACTION – TRESPASS ON THE CASE**

19. Paragraphs 1 through 18 are incorporated as though fully stated herein.
20. Counterdefendant Wells Fargo claim to be holder of a promissory note when there is no Chain of Title that gives Counterdefendant Wells Fargo the right to enforce the promissory note.
21. Counterdefendant Wells Fargo falsely claims to be an injured party when Counterdefendant Wells Fargo sold the note into a pooling and servicing agreement and forever loses control of the

10 "Where a court has jurisdiction, it has a right to decide any question which occurs in the cause, and whether its decision be correct or otherwise, its judgments, until reversed, are regarded as binding in every other court. But if it acts without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void, and form no bar to a remedy sought in opposition to them, even prior to a reversal. They constitute no justification, and all persons concerned in executing such judgments or sentences are considered in law as trespassers." *Elliott v Peirsol*, 1 Pet. 328,

asset under the Financial Accounting Standard 140. Counterdefendant Wells Fargo confirms lenders that securitize their loans are not the injured party "while retaining no skin in the game."[11]

22. Counterdefendant Wells Fargo, is a debtor and servicer in a repurchase agreement and the principal, interest, and escrow payments on deposit in Counterdefendant Wells Fargo's account were not property of Counterdefendant Wells Fargo[12]. Counterdefendants must either be a Holder in Due Course or a Servicer/Debtor, not both[13]. A servicer cannot cannot foreclose on its own commercial liability or repurchase agreement to avoid being forced to repurchase loans.

23. Counterdefendant Wells Fargo wants to avoid being forced to re-purchase the loan in Counterdefendant Wells Fargo's repurchase agreement and is claiming to be holder of a note, although said promissory note is a forgery. Wells Fargo is not the holder in due course and is not entitled to collect a debt or foreclose the lien of a deed of trust by "improving its own position by creating new documents and indorsements from third parties to itself to ensure that it could enforce its claims"[14] to hide the fact Counterdefendant Wells Fargo is not a holder in due course and cannot enforce the note.

24. Counterdefendant Wells Fargo claims to be holder of a promissory note Wells Fargo's internal foreclosure manual instructs attorneys how to forge on demand after the fact to improve it false claims.

**<u>THIRD CAUSE OF ACTION – TRESPASS ON THE CASE</u>**

25. *Paragraphs 1 through 24 are incorporated as though fully stated herein.*

26. Counterdefendant Wells Fargo, falsely claim Counterdefendant Wells Fargo is "entitled to

---

11 Exhibit G - Wells Fargo Myths & Facts page 2 "These mortgage bankers are the ones who shifted to shortcut underwriting and appraisal practices to make vast numbers of loans faster, packaged them into collateralized debt obligations (CDOs) and other complex securitizations with multiple tranches, and sold the securitized structures to investors, while retaining no skin in the game.

12 Cambridge Mortg. Corp., Bkrtcy D.S.C. 1988, 92 B.R. 145 "Federal Home Loan Mortgage Corporation was owner of notes and mortgages serviced by debtor, and thus principal, interest, and escrow payments on deposit in debtor's account were not property of debtor's estate though Corporation did not hold original mortgages in its name, in that Corporation was holder of original notes."

13 Lending Z, 12 CFR 226.39

14 Carrsow-Franklin (US BK S NY 2014) "... it does show a general willingness and practice on Wells Fargo's part to create documentary evidence, after-the-fact, when enforcing its claims, WHICH IS EXTRAORDINARY." "It constitutes substantial evidence that Wells Fargo's administrative group responsible for the documentary aspects of enforcing defaulted loan documents created new mortgage assignments and forged indorsements when it was determined by outside counsel that they were required to enforce loans." "It is more reasonable to infer from Mr. Kennerty's testimony that, instead, Wells Fargo was improving its own position by creating new documents and indorsements from third parties to itself to ensure that it could enforce its claims."

foreclose the lien of the Deed of Trust have been violated as follows; Defaults have been made under said Deed of Trust which include, but not limited to, the failure to timely make payments required under said Deed of Trust and the Note secured thereby, and, therefore, Applicant has elected to accelerate the entire indebtedness."

27. Counterdefendant Wells Fargo has no indebtedness on the note to accelerate. In fact, the note was paid in full on or about 10/27/2000 by Bankers Trust Company of California[15], Trustee for World Savings Bank REMICS V and VI extinguishing the debt[16]. Counterdefendant Wells Fargo elected to get funds through securitization rather than wait 30 years per original terms, thereby extinguishing the indebtedness and discharging the security interest in Deed of Trust[17].
28. Counterdefendant Wells Fargo, after receiving stated payment in full, failed to perform as per the terms in Deed of Trust paragraph 28.
29. The Deed of Trust was drafted by the Counterdefendant Wells Fargo. Under contract law, in the event of ambiguous language, the ruling is against the drafter of the document.
30. The terms of the Deed of Trust were created by the Counterdefendant Wells Fargo.
31. There was no record in Adams County Clerk and Recorder's office of a transfer of the Deed of Trust to a Third Party[18]. Therefore, the Debt has been Paid in Full to the Counterdefendant Wells Fargo. This evidence disputes Counterdefendant Wells Fargo's claim that the Promissory Note was assigned .
32. The Counterdefendant Wells Fargo is required to instruct the Counterdefendant Adams County Trustee Orecchio to release the security interest and upon payment in full as under the terms of the Deed of Trust paragraph 28 and has not done so.
33. Counterdefendant Wells Fargo sold the note with the words, "without recourse"[19] and according to World Savings Bank REMIC Pooling and Servicing Agreement[20], so that the Bankers Trust

15 Exhibit A - Endorsement page claiming a sale to the Bankers Trust Company of California is cancelled.
16 Exhibit H - Internal Revenue Service confirmed World Savings Bank REMICS V and VI for year 2000
17 Exhibit B – Deed of Trust Paragraph 28 Lender's Obligation To Discharge This Security Instrument, "When lender has been paid all of the amounts secured by this security instrument, Lender shall release or cancel this security instrument and I will pay all cost incurred."

18 Exhibit E – Adams County Clerk And Recorder Search Report dated 12/11/15

19 12 CFR Section 24 paragraph 7 under Corporate powers of associations States: " . . . by loaning money on personal security; and by obtaining, issuing, and circulating notes according to the provisions of Title 62 of the Revised Statutes. "The business of dealing in securities and stock by the association shall be limited to purchasing and selling such securities and stock without recourse,solely upon the order, and for the account of, customers, and in no case for its own account, and the association shall not underwrite any issue of securities or stock"
20 Exhibit I – World Savings Bank REMIC PSA, section 2.01 Conveyance of mortgage loans (a) "assign to Trustee

Company of California and or Fannie could never come back to counterdefendant Wells Fargo for recourse.

34. There is no evidence indicating that any amount is outstanding and payable to the Counterdefendant Wells Fargo and no debt is owed to the Counterdefendant Wells Fargo[21].

35. Counterdefendant Wells Fargo is required to record all changes affecting real estate and real parties of interest in the County Records. There is no evidence of such recording, therefore, the payment to Counterdefendant Wells Fargo cannot be claimed as an assignment but as a payment. The note has been paid in full by a third party and is not assigned.

36. The language of the Deed of Trust is very specific. The security interest must be discharged and released or canceled upon Counterdefendant Wells Fargo paid in full. The Counterdefendant Wells Fargo cannot claim that it has the right to "forward convey" to anyone paying the note. The Counterdefendant Wells Fargo cannot establish a pattern and practice of seasoning and sourcing funds from people making payments against the note.

37. Counterdefendant Wells Fargo have no right or claim to title or the right to foreclose the lien of Deed of Trust that secures a note paid in full Counterdefendant Wells Fargo failed to disclose because Counterdefendant Wells Fargo wants to avoid "being forced to repurchase loans"[22].

**FOURTH CAUSE OF ACTION – TRESPASS ON THE CASE**

38. Paragraphs 1 through 37 are included as though stated fully herein.

39. Counterdefendant Wells Fargo never loaned Counterclaimants any money. There is no debt due Counterdefendant Wells Fargo from any alleged loan from the use of Counterdefendant Well Fargo's capital[23].

---

without recourse all the right, title and interest of Depositor in and to the Mortgage Loans..."

21 Exhibit I – World Savings Bank REMIC PSA, Purchase Price: With respect to any Mortgage Loan (or REO Property) required to be purchased on any date pursuant to Section 2.02 or 2.04, an amount equal to the sum of (i) 100% of the Stated Principal Balance thereof plus the amount of any related unreimbursed Advances and Servicing Advances and (ii) unpaid accrued interest at the Mortgage Rate on the Stated Principal Balance thereof to the first day of the month following the month of purchase from the Due Date to which interest was last paid by the Mortgagor, less any amounts received by Master Servicer in the month of purchase applicable to such Mortgage Loan.

22 Holm v Wells Fargo & Freddie Mac(MO 43rd Circuit 2015) "The evidence established that Wells Fargo's intentional choice to foreclose arose from its own financial incentives. Dr. Kurt Kruger testified that Wells Fargo had financial incentives to seek reimbursement of its fees at a foreclosure sale. This economic motivation collided with the well being of David and Crystal Holm,... In other words, in this case, a powerful financial company exerted its will over a financially distressed family in Clinton County Missouri. The result is predictable, plaintiffs were severely damage;... Wells Fargo's actions were knowingly, intentional, and injurious. Defendant Wells Fargo operated from a position of superiority provided by its enormous wealth."

23 The National Bank or Currency Act of June 3, 1864, at 13 Stat. 99 Chp. 106 sections 8, 27, 28, 35, 37, 39 and Title 62 sections 5187, 5201, 5207 and Title 18 section 334, and Title 12 sections 83, 581 & 582.



EXHIBIT A

40. Counterdefendant Wells Fargo have supplied no legal evidence showing ownership or a title interest in the property or real estate, which is the subject of Counterdefendant Wells Fargo's alleged claim. Prohibitions imposed upon the Counterdefendant Wells Fargo by the National Bank or Currency Act, prohibit Wells Fargo from using its capital stock as security or collateral on the loan of money.
41. Counterdefendant Wells Fargo did not loan Counterdefendant Wells Fargo's credit either as a "national bank has no power to lend its credit to another by becoming surety, indorser, or guarantor for him"[24].
42. Counterdefendant Wells Fargo never disclosed Counterdefendant Wells Fargo is prohibited by law from loaning its own capital, or any trust, or that counterdefendant Wells Fargo "retained no skin in the game" due to securitization voiding the contract ab initio[25].
43. Counterdefendant Wells Fargo told counterclaimants the funds were coming from Counterdefendant Wells Fargo's own capital fraudulently misrepresenting and concealing the facts inducing counterclaimants into signing a promissory note to pay Counterdefendant Wells Fargo back when Counterdefendant Wells Fargo knew Counterdefendant Wells Fargo had no intention of loaning its capital.
44. Counterdefendant Wells Fargo falsely informed counterclaimants it loaned its capital to counterclaimants. Counterdefendant Wells Fargo's intentional "lack of disclosure" of the true nature of the contract is fraud voiding the contract.

**FIFTH CAUSE OF ACTION – TRESPASS ON THE CASE**

45. Paragraphs 1 through 44 are included as though stated fully herein.
46. Counterdefendants Olson, Shilliday, Robson, Wright, Cruseturner, and LeMoine falsely claim defaults against a note that is paid in full secured by a invalid discharged Deed of Trust. Counterdefendants Olson, Shilliday, Robson, Wright, Cruseturner, and LeMoine are misrepresenting commercial liability or repurchase agreement between Counterdefendant Wells Fargo and its investor Counterdefendant Fannie Mae Counterdefendant Wells Fargo admits it wants to avoid "being forced to re-purchase".
47. Counterdefendants Olson, Shilliday, Robson, Wright, Cruseturner, and LeMoine falsely filed a

24 Farmers and Miners Bank v. Bluefield Nat 'l Bank, 11 F 2d 83, 271 U.S. 669; "A national bank has no power to lend its credit to any person or corporation." Bowen v. Needles Nat. Bank, 94F 925, 36 CCA 553, certiorari denied in 20 S.Ct 1024, 176 US 682, 44 LED 637.

25 Fina Supply, Inc. v. Abilene Nat. Bank, 726 S.W.2d 537, 1987 it says "Party having superior knowledge who takes advantage of another's ignorance of the law to deceive him by studied concealment or misrepresentation can be held responsible for that conduct."

Notice of Election of Demand of a note that has been paid in full with Adams County Public Trustee and Counterdefendant Orecchio.

48. Counterdefendants Olson, Shilliday, Robson, Wright, Cruseturner, and LeMoine falsely motioned in the inferior court Rule 120 Hearing twice claiming a default on a note that has been paid in full for counterdefendant Wells Fargo who has no claim to title or right to foreclose.

49. Counterdefendants Olson, Shilliday, Robson, Wright, Cruseturner, and LeMoine is admitting on the court record that counterdefedandant Wells Fargo's loan activities are in direct violation of counterdefendant Wells Fargo's own charter and section 8 of the NATIONAL CURRENCY or BANK ACT of June 3, 1864 Chapter CVI, 13 Statutes 99, as amended and particularly section 27 of said act[26].

**SIXTH CAUSE OF ACTION – TRESPASS ON THE CASE**

50. Paragraphs 1 through 49 are incorporated as though fully stated herein.

51. Counterdefendant Fannie Mae falsely claim ownership of the promissory note when Counterdefendant Fannie Mae owns a security.

52. The note was already extinguished and destroyed when it was forever converted into a security before Fannie Mae bought the security after 10/27/2000, the date Counterdefendant Wells Fargo sold the note to the Bankers Trust Company of California in a repurchase agreement for securitization.

53. The Deed of Trust is invalid and secures a paid in full note not a security Fannie Mae has no right to title or right to foreclose the lien on the Deed of Trust.

54. Counterdefendant Fannie Mae did not loan Counterclaimants money and there is no contract between Counterclaimants and Counterdefendant Fannie Mae as Counterdefendant Fannie Mae's Charter prohibits Counterdefendant Fannie Mae from loaning consumers money[27].

55. Counterdefendant Fannie Mae contracts or repurchase agreements are commercial liabilities with the servicer/lender[28]. An investment is not a loan "Fannie Mae was chartered by Congress in 1938 to support liquidity, stability, and affordability in the secondary mortgage market, where

---

26 Section 8 of the National Currency or Bank Act, Sect 27 "And be it further enacted, That it shall be unlawful for any officer acting under the provisions of this act to countersign or deliver to any association, or to any other company or person, any circulating notes contemplated by this act, except as hereinbefore provided, and in accordance with the true intent and meaning of this act. And any officer who shall violate the provisions of this section shall be deemed guilty of a high misdemeanor, and on conviction thereof shall be punished by fine not to exceeding double the amount so countersigned and delivered, and imprisonment not less than one year and not exceeding fifteen years, at the discretion of the court in which he shall be tried."

27 Exhibit J Fannie Mae Charter

28 Exhibit K Fannie Mae Servicing Guide - Repurchases

existing mortgage-related assets are purchased and sold. Our charter does not permit us to originate loans or lend money directly to consumers in the primary mortgage market."

56. Counterdefendant Fannie Mae purchased the note and Counterdefendant Wells Fargo failed to disclose the note was paid in full a second time and failed discharge the Deed of Trust as required a second time. The note has not only been extinguished but has been forever converted into a security for securitization causing said Deed of Trust to be invalid. The Deed of Trust secures a note, not a security[29].

**SEVENTH CAUSE OF ACTION – TRESPASS ON THE CASE**

57. Paragraphs 1 through 56 are incorporated as though fully stated herein.
58. Counterdefendant Witness falsely claims Counterdefendant Wells Fargo services its own loan contrary to Counterdefendant Wells Fargo claims in 03/18/15 letter[30] and Fannie Mae claims[31].
59. Counterdefendant Witness fraudulently claims a consumer debt is owed when the note was paid in full on October 27, 2000 and the default is a commercial liability or repurchase agreement between Counterdefendant Wells Fargo and Counterdefendant Fannie Mae Counterdefendant Wells Fargo wants to avoid "being forced to repurchase."

**REQUEST FOR RELIEF**

60. For that cause of action therefore counterclaimant brings his suit.
61. WHEREFORE, counterclaimant requests relief and judgment against Counterdefendants as follows:
62. WHEREFORE, counterclaimant prays judgment against Counterdefendants, and each of them, as follows:
63. For First Cause of Action $613.000.00 and $1500.00 per day through the day the issues before this court are settled.
64. For Second Cause of Action $3000.00 per month after payment in full was received but not disclosed October 27, 2000 until such time as the issues before this court have been resolved rounded up to the end of the months in which said issues are resolved with the count starting the month of November, 2000 as the first month.
65. For Third Cause of Action $3000.00 per month after payment in full was received but not

---

29 *Exhibit B Deed of Trust Cover page*
30 Exhibit C Wells Fargo Servicer Letter

31 Exhibit D Fannie Mae Claims ownership of loan

disclosed October 27, 2000 until such time as the issues before this court have been resolved rounded up to the end of the months in which said issues are resolved with the count starting the month of November, 2000 as the first month..

66. For Fourth Cause of Action $3000.00 per month after fraudulently inducing into void contract July 13, 2000 until such time as the issues before this court have been resolved rounded up to the end of the months in which said issues are resolved with the count starting the month of September, 2000 as the first month.
67. For Fifth Cause of Action, $3000.00 per month after payment in full was received but not disclosed October 27, 2000 until such time as the issues before this court have been resolved rounded up to the end of the months in which said issues are resolved with the count starting the month of November, 2000 as the first month.
68. For Sixth Cause of Action, $3000.00 per month after payment in full was received but not disclosed October 27, 2000 until such time as the issues before this court have been resolved rounded up to the end of the months in which said issues are resolved with the count starting the month of November, 2000 as the first month.
69. For Seventh Cause of Action, $3000.00 per month after payment in full was received but not disclosed October 27, 2000 until such time as the issues before this court have been resolved rounded up to the end of the months in which said issues are resolved with the count starting the month of November, 2000 as the first month.
70. That the court enter a declaratory·judgment ordering the State of Colorado and all its subdivisions to update its records removing counterclaimants Tadlock from its jurisdiction;
71. That the court enter a declaratory judgment that Counterdefendants have acted contrary to constitutional right, power or privilege;
72. That the court enter a declaratory judgment that Counterdefendants actions were in excess of statutory jurisdiction, authority and short of statutory right;
73. That the court permanently enjoin Counterdefendants from interfering with counterclaimants' lawful right to its person, papers and property.
74. That the court enter a judgment dismissing case # 2015CV31569 brought before the inferior court not of record;
75. That the court grant counterclaimant such other and further relief as the court deems proper;
76. For interest as allowed by law;
77. For cost of suit;

I declare under penalty of perjury that the foregoing facts are true and correct to the best of my knowledge January 4th, 2016, Adams County, Colorado.

Derrick Leroy Tadlock
c/o 3879 East 120th Ave.
Thornton, Colorado [80233]

DERRICK LEROY TADLOCK
04/15/1969
SEAL
FREEMAN, LIBERTY, JUSTICE.

Cheryl Marie Tadlock
c/o 3879 East 120th Ave.
Thornton, Colorado [80233]

**Please serve Counterdefendants.**

**State of Colorado**
Service of Process
Secretary of State
1700 Broadway, Suite 200
Denver, CO 80290

**District Court Adams County**
1100 Judicial Center Drive
Brighton, CO 80601

**County of Adams**
4430 S. Adams County Pkwy.
Brighton, Colorado 80601

**Courtney Wright**
McCarthy & Holthus LLP
7700 E Arapahoe Rd Ste. 230
Centennial, CO 80112

**John G Stumpf**
Wells Fargo Bank N.A.
420 Montgomery St
San Francisco, CA 94104

**Jennifer Cruseturner**
McCarthy & Holthus LLP
7700 E Arapahoe Rd Ste. 230
Centennial, CO 80112

**Joan Olson**
McCarthy & Holthus LLP
7700 E Arapahoe Rd Ste. 230
Centennial, CO 80112

**Susan LeMoine**
McCarthy & Holthus LLP
7700 E Arapahoe Rd Ste. 230
Centennial, CO 80112



EXHIBIT A

**Holly Shilliday**
McCarthy & Holthus LLP
7700 E Arapahoe Rd Ste. 230
Centennial, CO 80112

**Erin Robson**
McCarthy & Holthus LLP
7700 E Arapahoe Rd Ste. 230
Centennial, CO 80112

**Witness Jane Doe**
Wells Fargo Bank N.A.
420 Montgomery St
San Francisco, CA 94104

**Wells Fargo Bank N.A.**
420 Montgomery St.
San Francisco, CA 94104

**Jeff Shomion**
Wells Fargo Bank N.A.
420 Montgomery St
San Francisco, CA 94104

**Leesa Whitt-Potter**
Wells Fargo Bank N.A.
420 Montgomery St
San Francisco, CA 94104

**Frederick Michael Goodbee**
District Court Adams County
1100 Judicial Center Drive
Brighton, CO 80601

**Suzanne Fredrickson**
District Court Adams County
1100 Judicial Center Drive
Brighton, CO 80601

**Susan A Orecchio**
4430 S. Adams County Pkwy.
Suite W1000
Brighton, CO 80601-8217

**Fannie Mae**
3900 Wisconsin Ave, NW
Washington, DC 20016-2892

**Patrick Simonis**
Wells Fargo Bank N.A.
420 Montgomery St
San Francisco, CA 94104



EXHIBIT A

## LAW OF THE CASE

1. The law of the case is decreed as follows:

2. The State of Colorado is a corporation operated by the the Colorado state. "The government, by becoming a corporator, lays down its sovereignty so far as respects the transactions of the corporation, and exercises no power or privilege which is not derived from the charter. " *Bank of United States v. Planters' Bank of Georgia,* 22 U.S. 9 Wheat. 904 904 (1824) The inferior court and Adams County Public Trustee is a subdivision of said corporation.

3. The United States of America was established as a union of republican states in which the powers of sovereignty are vested in the people and are exercised by the people, either directly, or through representatives chosen by the people, to whom those powers are specially delegated. *In re Duncan*, 139 U.S. 449, 11 S.Ct. 573, 35 L.Ed. 219; *Minor v. Happersett*, 88 U.S. (21 Wall.) 162, 22 L.Ed. 627. Black's Law Dictionary, Fifth Edition, p. 626

4. Colorado state was established as a republic.

5. The law provides that once State and Federal Jurisdiction has been challenged, it must be proven. *Main v. Thiboutot*, 100 S. Ct. 2502 (1980).

6. Jurisdiction can be challenged at any time and once challenged, cannot be assumed and must be decided. *Basso v. Utah Power & Light Co.*, 495 F 2d 906, 910.

7. "...there is, as well, no discretion to ignore that lack of jurisdiction." *Joyce v. US*, 474 F2d 215.

8. "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." Bradbury v. Dennis, 310 F.2d 73 (10th Cir. 1962)

9. The burden shifts to the court to prove jurisdiction. *Rosemond v. Lambert*, 469 F2d 416.

10. ...if the issue is presented in any way the burden of proving jurisdiction rests upon him

EXHIBIT A

who invokes it. *Latana v. Hopper*, 102 F. 2d 188;

11. "When it clearly appears that the court lacks jurisdiction, the court has no authority to reach the merits. *In such a situation the action should be dismissed for want of* jurisdiction." *Melo v. United States, 505 F. 2d 1026*

12. Court must prove on the record, all jurisdiction facts related to the jurisdiction asserted. *Latana v. Hopper*, 102 F. 2d 188; *Chicago v. New York*, 37 F Supp. 150.

13. "No officer can acquire jurisdiction by deciding he has it. The officer, whether judicial or ministerial, decides at his own peril." *Middleton v. Low* (1866), 30 C. 596, citing *Prosser v. Secor* (1849), 5 Barb.(N.Y) 607, 608.

14. "Where a court has jurisdiction, it has a right to decide any question which occurs in the cause, and whether its decision be correct or otherwise, its judgments, until reversed, are regarded as binding in every other court. But if it acts without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void, and form no bar to a remedy sought in opposition to them, even prior to a reversal. They constitute no justification, and all persons concerned in executing such judgments or sentences are considered in law as trespassers." *Elliott v Peirsol*, 1 Pet. 328, 340, 26 U.S. 328, 340, 7L.Ed. 164 (1828)

15. "Thus, where a judicial tribunal has no jurisdiction of the subject matter on which it assumes to act, its proceedings are absolutely void in the fullest sense of the term." *Dillon v. Dillon*, 187 P 27.

16. "A court has no jurisdiction to determine its own jurisdiction, for a basic issue in any case before a tribunal is its power to act, and a court must have the authority to decide that question in the first instance." *Rescue Army v. Municipal Court of Los Angeles*, 171 P2d 8; 331 US 549, 91 L. ed. 1666, 67 S.Ct. 1409.

17. ...at the Revolution, the sovereignty devolved on the people; and they are truly the sovereigns of the country, but they are sovereigns without subjects...with none to govern but themselves..... [CHISHOLM v. GEORGIA (US) 2 Dall 419, 454, 1 L Ed 440, 455 @DALL (1793) pp471-472.]

EXHIBIT A

18. The very meaning of 'sovereignty' is that the decree of the sovereign makes law. [American Banana Co. v. United Fruit Co., 29 S.Ct. 511 , 513, 213 U.S. 347, 53 L. Ed. 826, 19 Ann. Cas. 1047.]

19. The people of this State, as the successors of its former sovereign, are entitled to all the rights which formerly belonged to the King by his prerogative. [Lansing v. Smith, 4 Wend. 9 (N.Y.) (1829), 21 Am.Dec. 89 10C Const. Law Sec. 298; 18 C Em.Dom. Sec. 3, 228; 37 C Nav.Wat. Sec. 219; Nuls Sec. 167; 48 C Wharves Sec. 3, 7.]

20. A consequence of this prerogative is the legal *ubiquity* of the king. His majesty in the eye of the law is always present in all his courts, though he cannot personally distribute justice. (Fortesc.c.8. 2Inst.186) His judges are the mirror by which the king's image is reflected. 1 Blackstone's Commentaries, 270, Chapter 7, Section 379.

21. Where rights secured by the Constitution are involved, there can be no rule making or legislation which could abrogate them . [Miranda v. Arizona , 384 US 436, 491]

22. The assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice. [Davis v. Wechsler, 263 US 22, 24.]

23. Republican government. One in which the powers of sovereignty are vested in the people and are exercised by the people, either directly, or through representatives chosen by the people, to whom those powers are specially delegated. [In re Duncan, 139 U.S. 449, 11 S.Ct. 573, 35 L.Ed. 219; Minor v. Happersett, 88 U.S. (21 Wall.) 162, 22 L.Ed. 627." Black's Law Dictionary, Fifth Edition, p. 626.]

24. This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby; any Thing in the Constitution or Laws of any State to the Contrary notwithstanding. Constitution for the United States of America, Article VI, Clause 2.

25. Conspiracy against rights: If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured - They shall be fined under this title or imprisoned not more than

ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death. [18, USC 241]

26. Deprivation of rights under color of law: Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death. [18, USC 242]

27. COURT. The person and suit of the sovereign; the place where the sovereign sojourns with his regal retinue, wherever that may be. [Black's Law Dictionary, 5th Edition, page 318.]

28. COURT. An agency of the sovereign created by it directly or indirectly under its authority, consisting of one or more officers, established and maintained for the purpose of hearing and determining issues of law and fact regarding legal rights and alleged violations thereof, and of applying the sanctions of the law, authorized to exercise its powers in the course of law at times and places previously determined by lawful authority. [Isbill v. Stovall, Tex.Civ.App., 92 S.W.2d 1067, 1070; Black's Law Dictionary, 4th Edition, page 425]

29. COURT OF RECORD. To be a court of record a court must have four characteristics, and may have a fifth. They are:

**A.** A judicial tribunal having attributes and exercising functions independently of the person of the magistrate designated generally to hold it [Jones v. Jones, 188 Mo.App. 220, 175 S.W. 227, 229; Ex parte Gladhill, 8 Metc. Mass., 171, per Shaw, C.J. See, also, Ledwith v. Rosalsky, 244 N.Y. 406, 155 N.E. 688, 689][Black's Law Dictionary, 4th Ed., 425, 426]

**B.** Proceeding according to the course of common law [Jones v. Jones, 188 Mo.App. 220, 175 S.W. 227, 229; Ex parte Gladhill, 8 Metc. Mass., 171, per Shaw, C.J. See, also, Ledwith v. Rosalsky, 244 N.Y. 406, 155 N.E. 688, 689][Black's Law Dictionary, 4th Ed., 425, 426]

**C.** Its acts and judicial proceedings are enrolled, or recorded, for a perpetual memory and testimony. [3 Bl. Comm. 24; 3 Steph. Comm. 383; The Thomas Fletcher, C.C.Ga., 24 F. 481; Ex parte Thistleton, 52 Cal 225; Erwin v. U.S., D.C.Ga., 37 F. 488, 2 L.R.A. 229; Heininger v. Davis, 96 Ohio St. 205, 117 N.E. 229, 231]

**D.** Has power to fine or imprison for contempt. [3 Bl. Comm. 24; 3 Steph. Comm. 383; The Thomas Fletcher, C.C.Ga., 24 F. 481; Ex parte Thistleton, 52 Cal 225; Erwin v. U.S., D.C.Ga., 37 F. 488, 2 L.R.A. 229; Heininger v. Davis, 96 Ohio St. 205, 117 N.E. 229, 231.][Black's Law Dictionary, 4th Ed., 425, 426]

**E.** Generally possesses a seal. [3 Bl. Comm. 24; 3 Steph. Comm. 383; The Thomas Fletcher, C.C.Ga., 24 F. 481; Ex parte Thistleton, 52 Cal 225; Erwin v. U.S., D.C.Ga., 37 F. 488, 2 L.R.A. 229; Heininger v. Davis, 96 Ohio St. 205, 117 N.E. 229, 231.][Black's Law Dictionary, 4th Ed., 425, 426]

30. Henceforth the writ which is called Praecipe shall not be served on any one for any holding so as to cause a free man to lose his court. [Magna Carta, Article 34].
31. The people of this state do not waive their sovereignty to the agencies which serve them.

32. If any claim, statement, fact, or portion in this action is held inapplicable or not valid, such decision does not affect the validity of any other portion of this action.
33. The singular includes the plural and the plural the singular.
34. The present tense includes the past and future tenses; and the future the present, and the past the present.
35. The masculine gender includes the feminine and neuter.
36. "For a crime to exist there must be an injured party. There can be no sanction or penalty imposed upon one because of his exercise of his constitutional rights."
    **Sherar v. Cullen, 486 F. 945**
37. The National Bank or Currency Act of June 3, 1864, at 13 Stat. 99 Chp. 106 sections 8, 27, 28, 35, 37, 39 and Title 62 sections 5187, 5201, 5207 and Title 18 section 334, and Title 12 sections 83, 581 & 582.
38. Farmers and Miners Bank v. Bluefield Nat 'l Bank, 11 F 2d 83, 271 U.S. 669; "A national bank has no power to lend its credit to any person or corporation." Bowen v. Needles Nat. Bank, 94F 925, 36 CCA 553, certiorari denied in 20 S.Ct 1024, 176 US 682, 44 LED 637.
39. Cambridge Mortg. Corp., Bkrtcy D.S.C. 1988, 92 B.R. 145 "Federal Home Loan Mortgage Corporation was owner of notes and mortgages serviced by debtor, and thus principal, interest, and escrow payments on deposit in debtor's account were not property of debtor's estate though Corporation did not hold original mortgages in its name, in that Corporation was holder of original notes."
40. Slorp v Lerner, Sampson, & Rothfuss (6th Circuit Federal Appeals Court "..If the defendants were not authorized to initiate the foreclosure proceedings, Slorp's injuries were caused by their fraud rather than his own alleged default."
41. Carrsow-Franklin (US BK S NY 2014) "... it does show a general willingness and practice on Wells Fargo's part to create documentary evidence, after-the-fact, when enforcing its claims, WHICH IS EXTRAORDINARY.""It constitutes substantial evidence that Wells Fargo's administrative group responsible for the documentary aspects of enforcing defaulted loan documents created new mortgage assignments and forged indorsements when it was determined by outside counsel that they were required to enforce loans." "It is more reasonable to infer from Mr. Kennerty's testimony that, instead, Wells Fargo was improving its own position by creating new documents and indorsements from third parties to itself to ensure that it could enforce its claims."

42. Holm v Wells Fargo & Freddie Mac(MO 43rd Circuit 2015) "The evidence established that Wells Fargo's intentional choice to foreclose arose from its own financial incentives. Dr. Kurt Kruger testified that Wells Fargo had financial incentives to seek reimbursement of its fees at a foreclosure sale. This economic motivation collided with the well being of David and Crystal Holm,… In other words, in this case, a powerful financial company exerted its will over a financially distressed family in Clinton County Missouri. The result is predictable, plaintiffs were severely damage;…Wells Fargo's actions were knowingly, intentional, and injurious. Defendant Wells Fargo operated from a position of superiority provided by its enormous wealth."

43. The rules of this court shall be the Federal Rules of Civil Procedure.

(Page 6 of 6)

Exhibit A

PAY TO THE ORDER OF
BANKERS TRUST COMPANY OF CALIFORNIA

CANCELLED

WORLD SAVINGS BANK, FSB

BY: Valda Pye
NAME: VALDA R. PYE
TITLE: CUSTODIAN OF RECORDS

PAY TO THE ORDER OF
FANNIE MAE
WITHOUT RECOURSE
WORLD SAVINGS BANK, FSB

CANCELLED

By: Craig Swonson
CRAIG SWONSON
VICE PRESIDENT AND
CUSTODIAN OF RECORDS

WITHOUT RECOURSE
PAY TO THE ORDER OF
WELLS FARGO BANK, N.A.

ALTON W POP[illegible] VICE PRESIDENT

LoanNumber: 0013056718 DocID: 2978799135

EXHIBIT A

Exhibit B 14

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

WHEN RECORDED MAIL TO:
WORLD SAVINGS
CENTRAL PROCESSING CENTER
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER: 0013056718

NOTE AMOUNT: $398,400.00

C0690550
7/17/2000 15:44:01
BK: 6191 PG: 0219-0232
70.00 DOC FEE: 0.00
CAROL SNYDER
ADAMS COUNTY

FOR RECORDER'S USE ONLY

ADAMS COUNTY COLORADO SEAL

Certified to be a full, true and correct copy of the Recorded Document consisting of 14 pages in my custody.
KAREN LONG, Adams County Clerk & Recorder
By Lindsay Long Date 9-6-13

# DEED OF TRUST

**THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED.**

**THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $498,000.00 WHICH IS 125% OF THE "NOTE AMOUNT".**

**I. DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST**

(A) **Security Instrument.** This Deed of Trust, which is dated JULY 13, 2000, will be called the "Security Instrument."

(B) **Borrower.** DERRICK L TADLOCK AND CHERYL MARIE TADLOCK, HUSBAND AND WIFE

sometimes will be called "Borrower" and sometimes simply "I" or "me."

(C) **Lender.** WORLD SAVINGS BANK, FSB, A FEDERAL SAVINGS BANK * * * * * * * * * * * * * * * * * * * * * * * * * * * * *, ITS SUCCESSORS AND/OR ASSIGNEES, will be called "Lender." Lender is A FEDERAL SAVINGS BANK * * * * * * * * * * * * which is organized and exists under the laws of the United States. Lender's address is 1901 HARRISON STREET, OAKLAND, CALIFORNIA 94612.

(D) **Note.** The note signed by Borrower and having the same date as this Security Instrument will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. $398,400.00 ("Note Amount"), plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in monthly payments and to pay the debt in full by AUGUST 01, 2030.

(E) **Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

(F) **Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

(G) **Person.** Any person, organization, governmental authority or other party will be called "Person."

* 0 0 3 *

LENDER'S USE ONLY



DT CMT

EXHIBIT A

0013056718

(H) **Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and the Public Trustee of ADAMS County, is the "Trustee."

## II. BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i) pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii) pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii) keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

## III. DESCRIPTION OF THE PROPERTY

I give Trustee rights in the Property described below:

(i) The property which is located at 13981 DOWNING ST, BRIGHTON, CO 80601. * * * * * * * * * * * * * * * * * * * * * * * * * * * The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii) All buildings and other improvements that are located on the Described Property;

(iii) All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv) All rents or royalties and other income from the Described Property;

(v) All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi) All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii) All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii) All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix) All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x) All of the amounts that I pay to Lender under Paragraph 2 below.

## IV. BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.



DI CMT

EXHIBIT A

0013056718

## COVENANTS

I promise and I agree with Lender as follows:

**1. BORROWER'S PROMISE TO PAY**

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

**2. PAYMENTS FOR TAXES AND INSURANCE**

**(A) Borrower's Obligations**

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

**(B) Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.



DT CMT

EXHIBIT A

0013056718

27. RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each monthly payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, the Lender may take action to have the Property sold under any applicable Federal Law, rule or regulation and, where Federal Law is not applicable, under the law of the state where the Property is located, which will be called the "Applicable Law."

Lender does not have to give me notice of a Breach of Duty unless notice is required by Applicable Law. If Lender does not make a demand for full payment upon a Breach of Duty, Lender may make a demand for full payment upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed under the Applicable Law to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken upon ex parte application, and without prior notice to me, notice being expressly waived by me, and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender except as limited or prohibited by the Applicable Law. If the Property is sold under the Applicable Law, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property, except to the extent that the Applicable Law limits or prohibits any such charges.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

28. LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT

When Lender has been paid all of the amounts secured by this Security Instrument, Lender shall release or cancel this Security Instrument and I will pay all costs incurred.

29. STATEMENT OF OBLIGATION

To the extent allowed by law, I will give Lender a fee for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

30. WAIVER OF HOMESTEAD

My right to any applicable homestead exemption in the Property is waived.

31. RIDERS TO THIS SECURITY INSTRUMENT

If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.



Dr-CUNT

EXHIBIT A

0013056718

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_________________________ (Seal)
DERRICK L TADLOCK

_________________________ (Seal)
CHERYL MARIE TADLOCK

_________________________ (Seal)

_________________________ (Seal)

_________________________ (Seal)

_________________________ (Seal)

ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT



EXHIBIT A

# WORLD SAVINGS

## EXHIBIT "A"
## LEGAL DESCRIPTION

LOAN NO. 0013058718

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF ADAMS STATE OF COLORADO * * * * * * , DESCRIBED AS FOLLOWS:

LOT 2, PEAK VIEW ESTATES, COUNTY OF ADAMS, STATE OF COLORADO.

TAPE ONLY THE LEGAL DESCRIPTION TO THIS PAGE.

CO

GF133A1 (01.03.00/1-00) H29A

DT Cmt

EXHIBIT A

*Wells Fargo Home Mortgage*
*Return Mail Services*
*PO Box 659558*
*San Antonio, TX 78265*

Exhibit C

WELLS FARGO HOME MORTGAGE

03/18/15

| Account Information | |
|---|---|
| **Fax:** | 1-800-313-0892 |
| **Telephone:** | 1-877-371-9959 |
| **Correspondence:** | PO Box 10335<br>Des Moines, IA 50306 |
| **Hours of operation:** | Mon - Fri, 8 a.m. - 10 p.m., Sat, 8 a.m. - 5 p.m., CT |
| **Loan number:** | 0013056718 |
| **Property address:** | 13961 Downing St<br>Brighton CO 80601 |

1AB 00164/008506/000320 0039 2 AGSR8BHP212 512

DERRICK L TADLOCK
CHERYL M TADLOCK
3879 E 120TH AVE APT 242
THORNTON, CO 80233-1658

Subject: Your request for assistance

Note: We service your mortgage on behalf of your investor, FANNIE MAE.

Dear Derrick L Tadlock & Cheryl M Tadlock:

I'm responding to your request for mortgage assistance. Your application has been pending for a considerable period of time and we have not yet received a complete application. Because you have not provided me with all the required documentation to complete the application, we are not able to offer you assistance options.

It is important that you contact us if you wish to continue your request for assistance and provide all requested documents. Please note that if you previously provided documents they may no longer be valid and may need to be resent.

**What you need to know about foreclosure**
If your mortgage has been or will be referred to foreclosure, that process may move forward now. Also, as part of the foreclosure process, you may see steps being taken in proceedings or receive notices from a third-party attorney delivered by mail.

**I'm here for you**
If you have any questions about the information in this letter, please call me at the phone number listed below.

Sincerely,

Jeff Shomion

Jeff Shomion
Home Preservation Specialist
Wells Fargo Home Mortgage

WFM327C

5120013056718HP212

HP212 512
008506/000320 AGSR8B S2-ET-M1-C003

EXHIBIT A

# Fannie Mae Loan Lookup Results: Match Found

It appears that Fannie Mae owns your loan, based on the information you entered:

DERRICK TADLOCK
13961 DOWNING ST
BRIGHTON, CO 80602
Last 4 Digits of Social Security
****

Mortgage Loan Closing Date: 0
Mortgage Company: **WELLS F**
**BANK, N.A.**

## Results—Our Records Indicate:

- Fannie Mae owns your loan that was closed on or before May 31, 2009. Knowing the L Date is important because some programs, such as the Home Affordable Refinance Pr (HARP), are available only for loans closed on or before May 31, 2009.
- Your mortgage company is **WELLS FARGO BANK, N.A.**.
- You may be eligible for the Home Affordable Refinance Program (HARP). You may als for the Home Affordable Modification Program (HAMP) or other mortgage assistance p available exclusively for Fannie Mae-owned loans.

EXHIBIT A

This is a report on a portion of the index to the official records of Adams County, Colorado as of ...
Internal Search Adams County Clerk and Recorder Released Through 12/8/2015 Released Through Reception# 201500

| Search Criteria | |
|---|---|
| Name | TADLOCK DERRICK |
| Book Type | All Book Types |
| Date Range | All Years |
| From Date | 01/01/1960 |
| To Date | 12/11/2015 |
| Show Names | All Names |
| Instrument Type | All Instrument Types |
| Sorted On | Compressed Name [Ascending] |
| Report Scope | Full |

| Names Searched |
|---|
| TADLOCK DERRICK |
| TADLOCK DERRICK L |
| TADLOCK DERRICK LEROY |
| TADLOCK DERRICK-LEROY |

| Filter(s) |
|---|
| No Filters applied. |

Exhibit E

| U | Reception # | Party T | First Crossparty Name | First Cross Party | Book/Page | Record Date | Doc Type | Doc Le |
|---|---|---|---|---|---|---|---|---|
| | 2009000019906 | To | TADLOCK DERRICK | DOWNING PROPERTIE | 0 / 0 | 03/20/2009 | SUBSTITUTION OF TRUST | NO LE |
| | 2009000073784 | From | TADLOCK DERRICK | TADLOCK DERRICK | 0 / 0 | 10/05/2009 | AFFIDAVIT | NO LE |
| | 2009000073784 | To | TADLOCK DERRICK | TADLOCK DERRICK | 0 / 0 | 10/05/2009 | AFFIDAVIT | NO LE |
| | 2009000093533 | From | TADLOCK DERRICK | TADLOCK DERRICK | 0 / 0 | 12/17/2009 | AFFIDAVIT | NO LE |
| | 2009000093533 | To | TADLOCK DERRICK | TADLOCK DERRICK | 0 / 0 | 12/17/2009 | AFFIDAVIT | NO LE |
| | 2010000060645 | From | TADLOCK DERRICK | DOWNING PROPERTIE | 0 / 0 | 09/10/2010 | RELEASE OF DEED OF TR | NO LE |
| | 2010000062115 | From | TADLOCK DERRICK | DOWNING PROPERTIE | 0 / 0 | 09/17/2010 | RELEASE OF DEED OF TR | NO LE |
| | 2010000063053 | From | TADLOCK DERRICK | DOWNING PROPERTIE | 0 / 0 | 09/21/2010 | RELEASE OF DEED OF TR | NO LE |
| | 2010000075378 | From | TADLOCK DERRICK | TADLOCK DERRICK | 0 / 0 | 11/02/2010 | AFFIDAVIT | NO LE |
| | 2010000075378 | To | TADLOCK DERRICK | TADLOCK DERRICK | 0 / 0 | 11/02/2010 | AFFIDAVIT | NO LE |
| | 2014000076806 | From | TADLOCK DERRICK | TADLOCK DERRICK | 0 / 0 | 11/03/2014 | NOTICE | NO LE |
| | 2014000076806 | To | TADLOCK DERRICK | TADLOCK DERRICK | 0 / 0 | 11/03/2014 | NOTICE | NO LE |
| | 2000030690549 | To | TADLOCK DERRICK L | SMITH DOUGLAS J | 6191 / 218 | 07/17/2000 | WARRANTY DEED | L2 PEA |
| | 2000030690550 | From | TADLOCK DERRICK L | WORLD SAVINGS BAN | 6191 / 219 | 07/17/2000 | DEED OF TRUST | L2 PEA |
| | 2001030754437 | From | TADLOCK DERRICK L | DYNAMIC HOLDING TF | 0 / 0 | 01/25/2001 | WARRANTY DEED | L2 PEA |
| | 2008000040722 | To | TADLOCK DERRICK L | TADLOCK DERRICK LE | 0 / 0 | 05/20/2008 | POWER OF ATTORNEY | OTHER |
| | 2009000016280 | From | TADLOCK DERRICK L | WORLD SAVINGS BAN | 0 / 0 | 03/06/2009 | NOTE | NO LE |
| | 2010000063054 | From | TADLOCK DERRICK L | PEAK VIEW ESTATES | 0 / 0 | 09/21/2010 | DECLARATION | LOT 2 |
| | 2014000078774 | From | TADLOCK DERRICK L | TADLOCK DERRICK L | 0 / 0 | 11/10/2014 | TERMINATION UCC - PAPI | LOT 2 |
| | 2014000078774 | To | TADLOCK DERRICK L | TADLOCK DERRICK L | 0 / 0 | 11/10/2014 | TERMINATION UCC - PAPI | LOT 2 |
| | 2015000036658 | From | TADLOCK DERRICK L | PUBLIC TRUSTEE ADA | 0 / 0 | 05/18/2015 | NOTICE OF ELECTION AN | LOT 2 |
| | 2002030960712 | From | TADLOCK DERRICK LEROY | TADLOCK DERRICK LE | 0 / 0 | 04/25/2002 | NOTICE | NO LE |
| | 2002030960712 | To | TADLOCK DERRICK LEROY | TADLOCK DERRICK LE | 0 / 0 | 04/25/2002 | NOTICE | NO LE |
| | 2002030960463 | From | TADLOCK DERRICK LEROY | TADLOCK CHERYL MA | 0 / 0 | 04/25/2002 | NOTICE | NO LE |
| | 2002030960463 | To | TADLOCK DERRICK LEROY | TADLOCK DERRICK LE | 0 / 0 | 04/25/2002 | NOTICE | NO LE |
| | 2002030965913 | From | TADLOCK DERRICK LEROY | TADLOCK DERRICK LE | 0 / 0 | 05/06/2002 | FINANCE STATEMENT - E | L2 PEA |
| | 2002030965913 | To | TADLOCK DERRICK LEROY | TADLOCK DERRICK LE | 0 / 0 | 05/06/2002 | FINANCE STATEMENT - E | L2 PEA |
| | 2003031119889 | From | TADLOCK DERRICK LEROY | TADLOCK DERRICK LE | 0 / 0 | 04/03/2003 | LETTERS | NO LE |

EXHIBIT A

This is a report on a portion of the index to the official records of Adams County, Colorado as of 12/11/2015
Internal Search Adams County Clerk and Recorder Released Through 12/8/2015 Released Through Reception# 2015000

| U | Reception # | Party T | First Crossparty Name | First Cross Party | Book/Page | Record Date | Doc Type | Doc Leg |
|---|---|---|---|---|---|---|---|---|
| | 2003031119889 | To | TADLOCK DERRICK LEROY | TADLOCK DERRICK LE | 0 / 0 | 04/03/2003 | LETTERS | NO LEG |
| | 2003031143317 | From | TADLOCK DERRICK LEROY | DOWNING PROPERTIE | 0 / 0 | 05/15/2003 | QUIT CLAIM DEED | 13961 D |
| | 2008000040722 | From | TADLOCK DERRICK LEROY | TADLOCK DERRICK L | 0 / 0 | 05/20/2008 | POWER OF ATTORNEY | OTHER |
| | 2008000040723 | From | TADLOCK DERRICK LEROY | TADLOCK DERRICK LE | 0 / 0 | 05/20/2008 | NOTICE | OTHER |
| | 2008000040723 | To | TADLOCK DERRICK LEROY | TADLOCK DERRICK LE | 0 / 0 | 05/20/2008 | NOTICE | OTHER |
| | 2009000006364 | From | TADLOCK DERRICK-LEROY | TADLOCK DERRICK-LE | 0 / 0 | 01/29/2009 | POWER OF ATTORNEY | NO LEG |
| | 2009000006364 | To | TADLOCK DERRICK-LEROY | TADLOCK DERRICK LE | 0 / 0 | 01/29/2009 | POWER OF ATTORNEY | NO LEG |
| | 2009000006365 | From | TADLOCK DERRICK-LEROY | TADLOCK DERRICK-LE | 0 / 0 | 01/29/2009 | MISCELLANEOUS | NO LEG |
| | 2009000006365 | To | TADLOCK DERRICK-LEROY | TADLOCK DERRICK-LE | 0 / 0 | 01/29/2009 | MISCELLANEOUS | NO LEG |
| | 2009000095611 | From | TADLOCK DERRICK LEROY | REVENUE ENTERPRIS | 0 / 0 | 12/28/2009 | MISCELLANEOUS | NO LEG |
| | 2009000095611 | To | TADLOCK DERRICK LEROY | TADLOCK DERRICK LE | 0 / 0 | 12/28/2009 | MISCELLANEOUS | NO LEG |
| | 2010000021648 | From | TADLOCK DERRICK LEROY | WORLD SAVINGS BAN | 0 / 0 | 04/02/2010 | NOTE | NO LEG |
| | 2010000021649 | From | TADLOCK DERRICK LEROY | WORLD SAVINGS BAN | 0 / 0 | 04/02/2010 | DEED OF TRUST | NO LEG |
| | 2010000021650 | From | TADLOCK DERRICK LEROY | WORLD SAVINGS BAN | 0 / 0 | 04/02/2010 | MISCELLANEOUS | NO LEG |
| | 2013000103998 | From | TADLOCK DERRICK LEROY | TADLOCK DERRICK LE | 0 / 0 | 12/12/2013 | RELEASE | LOT 2 F |
| | 2013000103998 | To | TADLOCK DERRICK LEROY | TADLOCK DERRICK LE | 0 / 0 | 12/12/2013 | RELEASE | LOT 2 F |
| | 2014000020101 | From | TADLOCK DERRICK LEROY | TADLOCK DERRICK LE | 0 / 0 | 04/03/2014 | RELEASE | NO LEG |
| | 2014000020101 | To | TADLOCK DERRICK LEROY | TADLOCK DERRICK LE | 0 / 0 | 04/03/2014 | RELEASE | NO LEG |
| | 2014000067845 | From | TADLOCK DERRICK LEROY | TADLOCK DERRICK LE | 0 / 0 | 10/02/2014 | AFFIDAVIT | NO LEG |
| | 2014000067845 | To | TADLOCK DERRICK LEROY | TADLOCK DERRICK LE | 0 / 0 | 10/02/2014 | AFFIDAVIT | NO LEG |
| | 2014000067846 | From | TADLOCK DERRICK LEROY | TADLOCK DERRICK LE | 0 / 0 | 10/02/2014 | NOTICE | NO LEG |
| | 2014000067846 | To | TADLOCK DERRICK LEROY | TADLOCK DERRICK LE | 0 / 0 | 10/02/2014 | NOTICE | NO LEG |
| | 2014000076725 | From | TADLOCK DERRICK LEROY | TADLOCK DERRICK LE | 0 / 0 | 11/03/2014 | AFFIDAVIT | NO LEG |
| | 2014000076725 | To | TADLOCK DERRICK LEROY | TADLOCK DERRICK LE | 0 / 0 | 11/03/2014 | AFFIDAVIT | NO LEG |
| | 2015000040400 | From | TADLOCK DERRICK LEROY | TADLOCK DERRICK LE | 0 / 0 | 05/29/2015 | STATEMENT | NO LEG |
| | 2015000040400 | To | TADLOCK DERRICK LEROY | TADLOCK DERRICK LE | 0 / 0 | 05/29/2015 | STATEMENT | NO LEG |
| | 2015000042745 | From | TADLOCK DERRICK LEROY | TADLOCK DERRICK LE | 0 / 0 | 06/05/2015 | NOTICE | NO LEG |
| | 2015000042745 | To | TADLOCK DERRICK LEROY | TADLOCK DERRICK LE | 0 / 0 | 06/05/2015 | NOTICE | NO LEG |
| | 2015000055079 | From | TADLOCK DERRICK LEROY | WELLS FARGO BANK | 0 / 0 | 07/10/2015 | AFFIDAVIT | NO LEG |
| | 2015000080068 | From | TADLOCK DERRICK LEROY | TADLOCK DERRICK LE | 0 / 0 | 09/25/2015 | STATEMENT | LOT 2 F |
| | 2015000080068 | To | TADLOCK DERRICK LEROY | TADLOCK DERRICK LE | 0 / 0 | 09/25/2015 | STATEMENT | LOT 2 F |
| | 2015000085376 | From | TADLOCK DERRICK LEROY | TADLOCK DERRICK LE | 0 / 0 | 10/13/2015 | STATEMENT | NO LEG |
| | 2015000085376 | To | TADLOCK DERRICK LEROY | TADLOCK DERRICK LE | 0 / 0 | 10/13/2015 | STATEMENT | NO LEG |
| | 2015000098978 | From | TADLOCK DERRICK-LEROY | TADLOCK DERRICK-LE | 0 / 0 | 11/25/2015 | STATEMENT | LOT 2 F |
| | 2015000098978 | To | TADLOCK DERRICK-LEROY | TADLOCK DERRICK-LE | 0 / 0 | 11/25/2015 | STATEMENT | LOT 2 F |
| | 2015000099604 | From | TADLOCK DERRICK-LEROY | TADLOCK DERRICK-LE | 0 / 0 | 11/30/2015 | STATEMENT | NO LEG |
| | 2015000099604 | To | TADLOCK DERRICK-LEROY | TADLOCK DERRICK-LE | 0 / 0 | 11/30/2015 | STATEMENT | NO LEG |
| | 2015000099605 | From | TADLOCK DERRICK-LEROY | TADLOCK DERRICK-LE | 0 / 0 | 11/30/2015 | STATEMENT | NO LEG |
| | 2015000099605 | To | TADLOCK DERRICK-LEROY | TADLOCK DERRICK-LE | 0 / 0 | 11/30/2015 | STATEMENT | NO LEG |

EXHIBIT A

Exhibit F

# Wells Fargo Home Mortgage
# Foreclosure Attorney Procedure Manual, Version 1

| | |
|---|---|
| Status: | Revision 3 |
| Origination Date: | 11/09/2011 |
| Date Last Published: | 02/24/2012 |

## Purpose

### Pre-Introduction

We ask that you share this manual within your office, including those who may not be directly involved, to educate your staff on the Foreclosure program

### High Level Description of Process

Delinquent loans will be referred to the attorney once set up in the Foreclosure Workstation after the expiration of the demand. The attorney will be handling these loans from Referral to Sale/Confirmation/Redemption. The assigned Wells Fargo liaison will assist the attorney with any issues that arise outside of the normal process and review audit results.

Upon completion of the required documentation, the attorney will be authorized to file the Foreclosure Notice, keep Wells Fargo up to date, and address objections to the Foreclosure without loan level approval under established timeframes/guidelines. Any over-allowable or hourly fee requests not listed in the pre-approval form will require loan level approval from Wells Fargo.

If the attorney receives notice of an adversary, litigation issue, motion for sanctions, or any issue the attorney cannot complete in a time manner timely or any issue that will cause a delay in the timely execution of the sale, refer to the Litigation section of this manual. Wells Fargo will provide further instruction upon receipt of the communication from the attorney. The attorney will also be required to receive authorization for all over-allowable fees and costs as well as hourly billing requests for items not covered by the pre-approval form.

If the mortgagor contacts the attorney, and the attorney is unable to answer, the customer should be directed to the appropriate customer service number listed below. ***At no time should the Wells Fargo Liaison's direct phone line be provided to outside parties.***

***Wells Fargo Home Mortgage Foreclosure Customer Service – 1-800-868-0043***

***America's Servicing Company Customer Service – 1-888-828-2377***

**Overview**

The Foreclosure program has been designed to complement a Foreclosure attorney's current process, procedures and responsibilities through streamlining the necessary contact points with Wells Fargo and providing greater independence to the attorney's firm.

The program also leverages existing Wells Fargo automation. One of the key trigger points for automation is the addition of scheduled steps and the completion of steps (though the input of the actual date.) The expanded procedures of this section focus solely on the new expectations of the firms.

Each process section will have a breakdown of the overall flow, exact steps for exception processing, an outline of any reports that will be sent to the attorney, and specific compliance expectations and quality measurements. Please remember that the reports are to be a tool to assist in meeting all time frames, goals and compliance requirements.



EXHIBIT A

**Wells Fargo Home Equity / Wachovia Equity / Wells Fargo Financial**

Your office may receive referrals for files that are for specialty portfolios. These foreclosures should be processed following your normal procedures. DO NOT contact your liaison for questions on these files. All questions and communication should be directed to the processor listed in VendorScape, Desktop, or on the FOR1 screen in MSP.

**Desktop Referrals**

As of June 6, 2011, all new referrals will be sent through Desktop instead of VendorScape. Desktop referrals can be identified by the K33 step, REFERRED IN DESKTOP on the FOR3 screen in MSP. You will still have loans that were previously referred through VendorScape that should continue being processed during this time.

**Reports**

You will receive several daily, weekly, and monthly reports to assist you in effectively monitoring and processing of your portfolio. The reports will be listed within the appropriate section of the manual. Effective February 15, 2012, for attorneys, the reports will be uploaded to your DTS mailbox. First, refer to your Transmission Confirmation Document. Then, access your Prod URL. Finally, key in your Universal ID/Logon ID. For liaisons, the reports will be in the **DS_FC_AttorneyRpts** folder on the shared drive. Reports are to be considered either "reference" or "action required." Reference reports are meant to give a status of the portfolio. Action required reports alert you of a task that needs to be performed. The following reports are meant to give you a general overview of the status of your portfolio.

**Attorney** – Trial Balance Report: Provide attorney with a weekly list of all pre-sale loans in his/her inventory (Reference).

Late Step Report: Provide attorney with a daily list of all foreclosure steps on FOR3 that are pending or past due. The attorney is to work this report to ensure the foreclosure is within investor timeline (Action Required).

**Liaison** – Late Step Report: Provide liaison with a list of all foreclosure steps that are pending or past due (Action Required).

## Job Titles/Roles/Departments Responsible/Overview of General Duties

**Foreclosure Referral Area Responsibilities (WFHM)**

- QC Review of files from collections
- Set up of FC workstation and various screens in MSP including initial coding
- Send copy of Demand to attorney
- Send referral to attorney through VendorScape or Desktop
- Send HUD Occupancy Letter for TX and GA. In the event the HUD Occupancy Letter needs to be re-sent, the attorney will send out letters for all states at an agreed price.

**Document Processing Area Responsibilities (WFHM)**

- Order original documents for original document states
- Ensure copies of collateral documents are available for all other states
- Sending appropriate documentation through VendorScape or Desktop
- Ensure attorney has necessary documents to complete 1st Legal and Assignments
- Conventional Loans – work with the Investor to obtain signatures on Assignments
- Manage incoming mail from mortgagors, third parties, etc.
- If needed, ensure copies of Mortgage, Note, HUD-1, Title Policy, and Assignments are available via VendorScape or Desktop



EXHIBIT A

- Approve and submit (through iclear) all BPO and appraisal invoices that were ordered by Attorney. (See BPO/Appraisal Ordering and Bidding)
- Send HUD Occupancy Letter on all states except TX and GA. In the event the HUD Occupancy Letter needs to be re-sent, the attorney will send out letters for all states at an agreed price.
- Review all requests for sale postponements. (See Postponed Sales)
- Work with Loss Mitigation on all sale postponements. (See Loss Mitigation)

- Review file to ensure ready for sale (no outstanding issues). (See Pre-Sale Loan Review (24 Hours Prior to Sale)
- Manage invalid sales. (See Rescinding Sales Procedures)
- Management of expirations of ratification, redemption and confirmation dates. (See Sales, Post-Sale and Closing File)
- Provide sales results by 4pm EST the same day the sale is held or, for attorneys on the West Coast whose sales are not held until the afternoon, provide sales results by 6pm EST or 9am EST the next business day. (See Sales Results)
- Provide chronological events of foreclosure within 24 hours of request (this may be needed for losses associated with the loan)
- Review and respond to Default Accounts Payable regarding all iclear exceptions (attorney invoices)
- Close VendorScape or Desktop at completion of foreclosure and submit final invoice within 10 business days via iclear. (See, Closing Your File)

**Additional FHLMC Designated Counsel Responsibilities**

- Manage the complete foreclosure process on any FHLMC designated foreclosure to ensure your office is in compliance with FHLMC requirements and guidelines.
- Order BPO through BPO Direct within 30 days of sale. (See FHLMC Designated BPO Ordering Process)

**Shared Responsibilities between Attorney & Wells Fargo Liaison**

- Handle third party calls (non-customer).
- Research all customer issues.
- Review sales package, ensure coding is updated and all proper steps are taken, and close out MSP foreclosure workstation.
- Supply mortgagor / authorized 3rd party with reinstatement and payoff figures.

## Timeframes to Complete the Process

Individual components of this document have their own time requirements.

## Regulatory Requirements

Individual components are regulated by one or more regulatory agencies, such as FHA, FHLMC, FNMA, VA, HUD, and various state regulations.

## Risk

- Being out of compliance with various federal and state regulations can lead to delays and/or Wells Fargo being forced to re-purchase loans.
- Being in violations of federal and state regulations can lead to possible sanctions and fines.

## Management Tools

N/A

## Definitions

| Term/Acronym | Definition |
|---|---|



EXHIBIT A

### Note Endorsement

****Please Note**** This process is only to be used if your office has already received the note. If you have not received the note, follow process for requesting the note listed in the Missing Note Process section of this manual.

| STEP | ACTION |
|---|---|
| 1 | **Attorney:** Enter step Z02 (Endorsed Note Needed) to the FOR3 screen (if a loan is in *foreclosure) or the BNK3 screen (if a loan is in Bankruptcy).* |
| 2 | **WFHM Default Docs Team:** Research needed endorsement.<br>• If the blank endorsement is in the file for an **original** state, execute the endorsement, send the original document to the attorney, and complete the Z02 step.<br>• If needed endorsement is located for a **copy state**, execute the endorsement, send the original document to imaging, and complete the Z02 step. |

### Allonge

****Please Note**** An allonge cannot be processed unless default docs or the attorney is in possession of the original note.

| STEP | ACTION |
|---|---|
| 1 | **Attorney:** If an allonge is still needed after a note has been endorsed, forward the allonge attachment to Wells Fargo Default Docs area via email address Defaultallongemailbox@wellsfargo.com and add step Y44, ATTORNEY REQUESTED ALLONGE, to FOR3. |
| 2 | **WFHM Default Docs Team:** Once allonge attachment is received, enter **log code FCALGR** (ALLONGE REQUEST RECEIVED). If property is located in a copy state, determine if original note can be ordered to complete the endorsement on the note.<br>• If the original note can be ordered, enter **log code of FCODAL** (FILE ORDERED FOR ALLONGE) and order the file from the custodian. There is a 14-business-day turnaround time for files to be ordered and received from the custodian. |
| 3 | **WFHM Default Docs Team:** If file was ordered and received, review FOR2 notes to determine what entities the attorney needs the note endorsement to reflect.<br>• Type the appropriate endorsement directly to the note, and make a copy of the endorsed note to be faxed to the WFHM imaging department.<br>• Enter **log code FCNRCS** (NOTE REQUEST COMPLETED/SENT TO ATTORNEY) *and mail the attorney the original, endorsed note.*<br>• Complete the Y44 step with the actual date the note was returned to attorney. |
| 4 | **WFHM Default Docs Team:** If property is located in an original doc state and attorney has the original note, review the allonge attachment to determine if we have signing authority to execute internally.<br>• If WFHM does have signing authority, enter **log code FCALGI** (ALLONGE SENT FOR INTERNAL SIGNATURE)<br>• If WFHM does not have signing authority, enter **log code FCALGE** (ALLONGE SENT OUT FOR EXECUTION) and mail document for 3rd party signature.<br>• After allonge has been executed, enter **log code FCALGA** (ALLONGE |



EXHIBIT A

| | |
|---|---|
| | COMPLETED/RETURNED TO ATTYORNEY).<br>• Complete the Y44 actual date with the date allonge was returned to attorney. |

The following log codes will be used for the allonge process:

| Log Codes | Comments |
|---|---|
| FCALGR | ALLONGE REQUEST RECEIVED |
| FCALGI | ALLONGE SENT FOR INTERNAL SIGNATURE |
| FCALGE | ALLONGE SENT OUT FOR EXECUTION |
| FCODAL | FILE ORDERED FOR ALLONGE |
| FCALGA | ALLONGE COMPLETED/RETURNED TO ATTORNEY |
| FCNRCS | NOTE REQUEST COMPLETED/SENT TO ATTORNEY |

**Missing Recorded Mortgage Process**

**RECORDED MORTGAGE NOT RECEIVED**

| STEP | ACTION |
|---|---|
| 1 | **Attorney:** If after the third business day of the referral date you have not received the recorded mortgage, **add log code RMNRRP** in VendorScape or add the Recorded Mortgage/Deed not received in Referral Package issue in Desktop. This can be done by selecting Issues from the Tool Menu and selecting Add Issue.<br>• This will add **log code RMNRRP** (RECORDED MORTGAGE NOT RECEIVED IN REFERRAL PACKAGE) to FOR2 in MSP, open and complete step Y86, ATTY REQ MISSING REC MORT, and open step K63 (RECORDED MTG RSCH REQ'D) on the MSP FOR3 screen. |
| 2 | **WFHM Default Docs Team:** Research missing recorded mortgage.<br>• If the recorded mortgage is found, complete the K63 step with the actual date the mortgage was provided/sent to the attorney. Load the mortgage onto LIV. For IL, send the original recorded mortgage to the attorney.<br>• If recorded mortgage is not found: complete the K63 step, and add step K54, ATTY NDS TO OBTAIN DOT/MTG. |
| 3 | **Attorney:** Once the K54 step is placed on the loan, this will authorize your office to obtain the recorded mortgage from the county clerk's office.<br>• Once you have obtained the recorded mortgage, enter the actual date for the K54 step. |

**RECORDED MORTGAGE INVALID OR ILLEGIBLE**

| STEP | ACTION |
|---|---|
| 1 | **Attorney:** If after the third business day of the referral date the recorded mortgage you received is invalid or illegible, add **log code DEEINV** in VendorScape, or add the Invalid, or Illegible Recorded Mortgage/Deed Received issue in Desktop. This can be done by selecting Issues from the Tool Menu and selecting Add Issue.<br>• This will add **log code DEEINV** (RECORDED DEED RECD INVALID OR NOT LEGIBLE) to FOR2 in MSP, open and complete step Y86, ATTY REQ MISSING REC MORT, and open step K63 (RECORDED MTG RSCH REQ'D) on the FOR3 screen in MSP. |
| 2 | **WFHM Default Docs Team:** Research missing recorded mortgage.<br>• If recorded mortgage is found, complete the K63 step with the actual date the |



EXHIBIT A

| | |
|---|---|
| | selecting Add Issue.<br>• This will add **log code TTLBAD** (TITLE RECEIVED IS INVALID OR NOT LEGIBLE) to FOR2 in MSP, open and complete step Y85, ATTY REQ MISSING TITLE POL, and open step K66, TITLE POLICY RESEARCH RQD, on FOR3 in MSP |
| 2 | **WFHM Default Docs Team:** Research missing title policy as follows:<br>• If title policy is found, complete the K66 step with the actual date the title policy was provided/sent to the attorney. Load the title policy onto LIV.<br>• If title policy is not found, complete the K66 step, and add step K67, ATTY NEEDS TO OBTAIN TITLE. |
| 3 | **Attorney:** Once the K67 step is placed on the loan, this will authorize your office to obtain the title policy directly from the title company.<br>• *Once you have obtained the title policy, enter the actual date for the K67 step.* |

***Reports:***

**Attorney** – Attorney to Obtain Title Policy: Daily report of all loans where the K67 scheduled date is not null and the K67 actual date is null. This report alerts the attorney to obtain title policy from the title company. (Action Required).

*****If the Title Policy was obtained by your office, you will need to notate VendorScape or Desktop stating that the title policy has been received/obtained and you will need to complete the K67 actual date to ensure loan falls off of the report*****

## Assignments

**Please be advised that your office should NOT be foreclosing in the name of MERS.**

- Effective March 1, 2011, Wells Fargo Post Closing Final Documents team will be drafting assignments for all delinquent MERS and Private Investor Loans. This will include any intervening assignments as well.
- **Attorney**: As of 5/27/11, you are to no longer to prepare an Assignment of Mortgage (AOM) (regardless of the referral date)

Follow these procedures:

| STEP | ACTION |
|---|---|
| 1 | After pulling title and it is determined an assignment is needed, log on to MSP and review MAS1/USR3, "FD AOM VALDIDTN" field (press F8 twice) and review the status of the assignment. |
| 2 | If the field displays "**0**" "Assignment Not Needed"<br>WFHM has already reviewed the chain of title and an assignment is not needed. If your office determines that an assignment is needed, please contact your liaison with the details as to why an assignment is still needed. |
| 3 | If the field displays "**1**" "Assignment Process Started" or "**2**" "Assignment Sent to County for Recording"<br>• Determine if you may proceed with foreclosure without the recorded assignment<br>• If you determine you are unable to proceed, email **FDAssignmentDesk@wellsfargo.com** |



EXHIBIT A

| | |
|---|---|
| | o Escalation in subject line of email<br>o Loan #<br>o Date the Assignment is needed by<br>o Assignor and Assignee<br>o If the assignment is required to be recorded prior to filing first legal, provide physical mailing address (Street Address, no P.O . boxes) and executed assignment will be sent via overnight mail<br>o The specific department or contact person the assignment should be sent to<br><br>• Add event Assignment Issue/Problem in VendorScape or go to the File Transfer Form on the Tool Menu and launch the FC_DS_Assignment_Needed or FC_IHR_Assignment_Needed or FC_IHNR_Assignment_Needed process in Desktop and complete the DDF. Include the assignor and assignee information for the needed assignment.<br>• Once you receive the executed assignment, record the assignment with the county.<br>• Retrieve the recorded assignment and complete the task Assignment Problem Corrected in VendorScape or complete the Executed Assignment Received by Attorney event in Desktop with the date the assignment was recorded.<br>• Proceed with the foreclosure process. Adhere to the document handling process as outlined in the Foreclosure Manual in regards to faxing a copy of the recorded assignment to Wells Fargo (see Documents Obtained by your Office)<br><br>**IMPORTANT: Document Handling Procedure-**<br><br>**If you currently are in possession of the original collateral file and related documents:**<br>(1) Complete Appendix T-Assignment Cover Page indicating that you are in possession of the Original AOM Document and will maintain it with the other original documents in the Collateral file<br>(2) Submit a copy of the recorded AOM document along with completed, signed Appendix T-Assignment Cover Page through Desktop<br>(3) File and maintain the AOM with the other collateral documents<br>(4) Return Original AOM along with other Original collateral documents to WFHM at the completion, suspension or removal of the foreclosure action<br>**If you are NOT in possession of the original collateral file and related documents**<br>(1) Retain a copy of the recorded AOM and<br>(2) Return original, recorded AOM to the following address:<br>Wells Fargo Home Mortgage<br>Mac X9999-018<br>PO Box 1629<br>Minneapolis, MN 55440<br><br>Upon receipt by WFHM, the AOM will be imaged and shipped to document custody to be included in the collateral file.<br><br>*Adhere to the document handling process as outlined in the Foreclosure Manual in regards to faxing a copy of the recorded assignment doc handling process may need to be reviewed and altered based on the above change.* |
| 4 | If the field displays "2" "Assignment sent to County for Recording"<br><br>• If a copy of the executed assignment is needed, email DocOrderingHMEC@wellsfargo.com and request a copy<br>o Specify in the body of the email that you require a copy of the unrecorded |



EXHIBIT A

| | |
|---|---|
| | executed assignment<br>• If a recorded copy of the assignment is required to proceed with first legal or foreclosure action email FDAssignmentDesk@wellsfargo.com and provide the following information:<br>o Escalation in subject line of email<br>o Loan #<br>o Date the Assignment is needed by<br>o Assignor and Assignee<br>o Your physical mailing address (Street Address, no P.O. Boxes)<br>o The specific department or contact person the assignment should be sent to<br>• Add event Assignment Issue/Problem in VendorScape or go to the File Transfer Form on the Tool Menu and launch the FC_DS_Assignment_Needed or FC_IHR_Assignment_Needed or FC_IHNR_Assignment_Needed process in Desktop and complete the DDF Includes the assignor and assignee information for the needed assignment.<br>• Retrieve the recorded assignment and complete the task Assignment Problem Corrected in VendorScape or complete the Executed Assignment Received by Attorney event in Desktop with the date the assignment was recorded.<br>• Proceed with the foreclosure process. Adhere to the document handling process as outlined in the Foreclosure Manual with regard to faxing a copy of the recorded assignment to Wells Fargo (see Documents Obtained by your Office)<br>*The original assignment that was previously sent will either be rejected or returned to Wells Fargo or the county may record it. If recorded, there will not be any impact on the Attorney's ability to proceed with foreclosure action.* |
| 5 | If the field displays "3" "Recorded Assignment received from County"<br>• Email or send an intercom to <u>your</u> liaison and request a copy of the recorded assignment (specify in the body of the email if you require a copy or the original is required) |
| 6 | If the "FD AOM VADIDTN" field does not display a 1, 2, or 3<br>• Add event Assignment Issue/Problem in VendorScape or go to the File Transfer Form on the Tool Menu and launch the FC_DS_Assignment_Needed or FC_IHR_Assignment_Needed or FC_IHNR_Assignment_Needed process in Desktop and complete the DDF. Include the assignor and assignee information for the needed assignment.<br>• Retrieve the recorded assignment and complete the task Assignment Problem Corrected in VendorScape or complete the Executed Assignment Received by Attorney event in Desktop with the date the assignment was recorded.<br>• Proceed with the foreclosure process. Adhere to the document handling process as outlined in the Foreclosure Manual in regards to faxing a copy of the recorded assignment to Wells Fargo (see Documents Obtained by your Office) |

*****This is only for escalated requests where Wells Fargo could face sanctions, miss a hearing, miss a sale, or halt foreclosure completely if not corrected immediately*****

**WFHM Post Closing Team:** Base the initial selection for assignment creation on loans that are >90 delinquent (or based on referral criteria set forth by the investor) and not yet referred to an attorney.

| STEP | ACTION |
|---|---|
| 1 | Review the loan/chain of title to determine if an assignment is required |



EXHIBIT A

| | |
|---|---|
| 2 | Prepare Assignment and image a copy of the executed unrecorded assignment prior to being submitted for recording in LIV (Loan Image Viewer) |
| 3 | Submit Assignment for recording to the county |
| 4 | Receive Recorded Assignment back from county and image a copy of the executed recorded assignment upon receipt from the county in LIV |
| 5 | Track Assignment (3 Stages)<br>• MSP: MAS1/USR3, "FD AOM VALDIDTN" field (Page 3, position 6, field 4C) with one of the three valuables:<br>o **0=Assignment Not Needed**<br>o **1=Assignment Process Started**<br>o **2=Assignment Sent to County for Recording**<br>o **3=Recorded Assignment received from County** |

**Note: The FD Assignment Desk mail box will provide a 72 hour turn time for providing documents back to the requested firm**

**Foreclosure Mail**

| STEP | ACTION |
|---|---|
| 1 | **Attorney:** Your office may receive documentation from the court pertaining to the foreclosure action. Retain these documents and place in your archived file upon completion of the foreclosure. See Appendix A for examples of unnecessary mail that does not need to be sent.<br>• Only send "critical documents" (Refer to Appendix A) to the appropriate department within Wells Fargo or your liaison.<br>• To expedite the handling of any documentation that is sent, please make sure that the package is addressed appropriately. For the correct way to address the envelope/package, refer to Appendix A. |
| 2 | **Liaison:** If you receive critical mail documents from the Attorney, consult with your manager. |

**Documents Obtained by your office**

| STEP | ACTION |
|---|---|
| 1 | **Attorney:** Any recorded mortgages, title policies, recorded assignments, Bailee letters, or LNA, **OBTAINED** by your office on behalf of Wells Fargo, need to be faxed with the following completed cover sheet directly to our imaging department at:<br>**FAX: 877-816-0144** |
| 2 | Please ensure that all of the information is submitted timely and that each document is faxed with a separate cover sheet. |
| 3 | The original document should then be retained with the foreclosure file unless the loan is reinstated. |
| 4 | If the loan is reinstated, please return the Original Note or LNA, and if applicable the original |



EXHIBIT A

Exhibit G

## MYTHS AND FACTS

**Golden West Financial Corporation/World Savings Bank**
(Last Updated June 25, 2010)

**Background**:

In the aftermath of the housing and economic crisis, the media and others wanted to understand who was to blame for the crisis and some rushed to judgment without any understanding of the subject matter. Knowledgeable observers have ultimately concluded that the crisis was facilitated by certain key factors, most notably:

1. A credit bubble, particularly in residential subprime and other mortgages, fueled by the origination, securitization and sale of huge volumes of loans by mortgage bankers into complex mortgage-backed securities (MBS). These MBS, including collateralized debt obligations (CDOs), were marketed by investment banks, purchased by hedge funds and other Wall Street investors, and blessed with AAA-ratings by rating agencies who were complacent (or worse).
2. The development and growth of complicated derivative instruments that magnified risks, including synthetic CDOs and credit default swaps (CDS). These derivative markets were neither transparent nor regulated and created a tangled web of counterparties that increased systemic risk when the credit bubble burst.
3. The destabilizing use of high leverage by financial institutions, which was made possible because of inadequate capital regulations. The use of high leverage also meant that many institutions were operating with inadequate liquidity, which increased their risk once credit markets contracted.
4. A variety of regulatory (or, perhaps more accurately, deregulatory) missteps, including the abolition of the Glass-Steagall Act, the maintenance of historically low interest rates for too long, ineffective regulatory oversight of financial institutions, and the existence of a completely unregulated shadow financial system (including mortgage brokers).

Residential mortgage portfolio lenders like Golden West Financial Corporation, that had operated in the same risk-averse fashion for more than 40 years, did not participate in the risky activities that contributed to and fueled the crisis – e.g. Golden West did not abandon traditional underwriting principles to generate huge volumes of loans, did not securitize and sell loans to investors, did not engage in the subprime practice of selling high-interest loans to borrowers, and did not enter into complex derivative instruments or participate in the CDO/CDS markets. Instead, Golden West stuck to its conservative residential mortgage portfolio business model of making high-quality loans that stayed on the company's books, keeping loan losses to a minimum (the lowest in the industry, including those who made only traditional 30-year fixed-rate loans), keeping tight controls over expenses, maintaining high capital and liquidity, achieving a long-term earnings record unparalleled in American corporate history (with the possible exception of Warren Buffett's Berkshire Hathaway), and actively advocating for stronger capital and mortgage regulations.



EXHIBIT A

Unfortunately, in the immediate post-crisis hysteria, some in the media and elsewhere jumped to many erroneous conclusions about Golden West based on false, flawed or incomplete information.

The information on the following pages lays out some of the myths and facts about Golden West.

## Myths

Here are some of the myths that are false:

1. ***Myth:** Golden West securitized its loans and sold them to investors.*
2. ***Myth:** The adjustable rate mortgage (ARM) offered by Golden West was a "tricky" loan, harmful to borrowers.*
3. ***Myth:** All Option ARMs are the same.*
4. ***Myth:** Golden West originated subprime mortgages.*
5. ***Myth:** Prior to its 2006 sale to Wachovia, Golden West changed from a 40+ year focus on quality to a focus on volume.*
6. ***Myth:** Golden West was to blame for the housing and economic crisis.*
7. ***Myth:** Golden West was responsible for Wachovia's demise.*
8. ***Myth:** The losses from the Golden West portfolio will be $36 billion.*
9. ***Myth:** The CEOs of Golden West, Herbert and Marion Sandler, pocketed $2.3 billion from the sale of Golden West to Wachovia.*

---

1. **Myth:** Golden West securitized its loans and sold them to investors.

**FACTS:**

- Golden West was a portfolio lender, meaning it kept its loans on its books and retained the risk. Unlike every other major mortgage lender in the country, Golden West maintained a conservative, risk-averse portfolio lending business model throughout its more than 40-year history.
- Golden West was not a mortgage banker like Countrywide, IndyMac, or Washington Mutual, whose business models required them to originate huge volumes of loans for securitization and sale to investors. These mortgage bankers are the ones who shifted to shortcut underwriting and appraisal practices to make vast numbers of loans faster, packaged them into collateralized debt obligations (CDOs) and other complex securitizations with multiple tranches, and sold the securitized structures to investors, while retaining no skin in the game.



EXHIBIT A

- As a portfolio lender, Golden West made money if borrowers stayed current on their loans and lost money if borrowers could not perform on their loans. This gave Golden West every incentive to originate only high-quality loans that would perform and work for borrowers. By contrast, mortgage bankers made money by generating fees from selling loans to investors and passing on the risk of loss to investors, and were therefore incented to make greater volume of loans. See http://www.goldenwestworld.com/business-model/ for a more detailed description of the differences between the portfolio business model and the mortgage banking business model.
- Portfolio lenders (like Golden West), who keep the loans on their books, can work directly and quickly with borrowers who might experience problems or need to modify or restructure their loans. By contrast, mortgage bankers are often unable to work with borrowers who may experience problems because the loans have been securitized and sold to others.

2. **Myth:** The adjustable rate mortgage (ARM) offered by Golden West was a "tricky" loan, harmful to borrowers.

**FACTS:**

- Starting in 1981, bank regulators authorized, and urged, portfolio lenders to make ARMs. In the aftermath of the savings and loan crisis, fixed-rate loans were seen as too risky for portfolio lenders because a spike in interest rates would cause the bank to owe more on its shorter-term liabilities than the bank would earn on its long-term fixed-rate assets (referred to as "borrowing short and lending long").
- The portfolio ARM used by Golden West maintained the same core structure since 1981, when major west coast portfolio lenders (e.g. Great Western, Home Savings, American Savings, Golden West) started making ARMs. This ARM became known as an Option ARM only much later. See http://www.goldenwestworld.com/wp-content/uploads/great-western-arm-white-paper.pdf for a white paper produced by Great Western in 1989, describing some of the history and structural benefits of the portfolio Option ARM.
- The key for risk-averse portfolio lenders (like Golden West) was to structure their Option ARM to reduce or eliminate the risk that a borrower could experience a significant and sudden payment increase if interest rates rose (known as "payment shock"). The portfolio Option ARM was structured to minimize the risk of payment shock. In Golden West's 25-year history with the portfolio Option ARM, few, if any, loans ever resulted in a payment increase to borrowers of more than 7.5% of the prior year's payment. Even today, after the worst economic crisis since the Great Depression, Wells Fargo (which now owns the Golden West portfolio) reports that they expect only a nominal number of Golden West portfolio ARMs to trigger a payment increase of more than 7.5% of the prior year's payment in the coming years.
- As described in the response to Myth 3, the portfolio Option ARM used by Golden West is structured differently, and more safely, than a riskier version of an ARM (also referred



EXHIBIT A

Exhibit H

**2000 : http://www.irs.gov/pub/irs-prior/p938--2000.pdf ( Should be on Page 58 & nothing reported)**

**World Savings Bank, FSB,**
**World Savings REMIC V**
June Pak, Assistant
Treasurer
c/o Bankers Trust Company
of
California, N.A.
1761 E. St. Andrew Place
Santa Ana, CA 92705
Tel: (714) 247-6299
CUSIP: Class A:
981923*AA3;
Class B: 981923*AB1
**Startup/Issue Date:**
**06/23/2000**

**World Savings Bank, FSB.**
**World Savings REMIC VI**
June Pak, Assistant
Treasurer
c/o Bankers Trust Company
of
California, N.A.
1761 E. St. Andrew Place
Santa Ana, CA 92705
Tel: (714) 247-6299
CUSIP: Class A:
98151X*AA6;
Class B: 98151X*AB4
**Startup/Issue Date:**
**10/27/2000**

**2001: http://www.irs.gov/pub/irs-prior/p938--2001.pdf (Page 73)**
**World Savings REMIC VII**
June Pak, Assistant Vice Presi-
dent
c/o Deutsche Bank
1761 E. St. Andrew Place
Santa Ana, CA 92705

Exhibit I

Purchase Price: With respect to any Mortgage Loan (or REO Property) required to be purchased on any date pursuant to Section 2.02 or 2.04, an amount equal to the sum of (i) 100% of the Stated Principal Balance thereof plus the amount of any related unreimbursed Advances and Servicing Advances and (ii) unpaid accrued interest at the Mortgage Rate on the Stated Principal Balance thereof to the first day of the month following the month of purchase from the Due Date to which interest was last paid by the Mortgagor, less any amounts received by Master Servicer in the month of purchase applicable to such Mortgage Loan.

Qualified Substitute Mortgage Loan: A Mortgage Loan substituted by Depositor for a Deleted Mortgage Loan which must, on the date of such substitution, as confirmed in an Officers' Certificate delivered to Trustee, (i) have an outstanding principal balance, after deduction of the principal portion of the monthly payment due in the month of substitution (or in the case of a substitution of more than one Mortgage Loan for a Deleted Mortgage Loan, an aggregate outstanding principal balance, after such deduction), not in excess of the Stated Principal Balance of the Deleted Mortgage Loan (the amount of any shortfall to be remitted by the applicable seller to Master Servicer for deposit in the Custodial Accounts in the month of substitution); (ii) have a Mortgage Rate no lower than and not more than 1% per annum higher than the Mortgage Rate of the Deleted Mortgage Loan as of the date of substitution; (iii) have a Loan-to-Value Ratio at the time of substitution no higher than that of the Deleted Mortgage Loan at the time of substitution; (iv) have a remaining term to stated maturity not greater than (and not more than one year less than) that of the Deleted Mortgage Loan; and (v) comply with each representation and warranty set forth in Exhibit F hereof.

Rating Agency: Initially, Moody's and thereafter, each nationally recognized statistical rating organization that has rated the Certificates at the request of the Company, or their respective successors in interest.

Realized Loss: With respect to each Mortgage Loan (or REO Property) as to which a Cash Liquidation or REO Disposition has occurred, an amount (not less than zero) equal to (i) the Stated Principal Balance of the Mortgage Loan (or REO Property) as of the date of Cash Liquidation or REO Disposition, plus (ii) interest (and REO Imputed Interest, if any) at the Mortgage Rate from the Due Date as to which interest was last paid or advanced to Securityholders up to the last day of the month in which the Cash Liquidation (or REO Disposition) occurred on the Stated Principal Balance of such Mortgage Loan (or REO Property) outstanding as of Due Date that such interest was not paid or advanced, minus (iii) the proceeds, if any, received during the month in which such Cash Liquidation (or REO Disposition) occurred, to the extent applied as recoveries of interest at the Mortgage Rate and to principal of the Mortgage Loan, net of the portion thereof reimbursable to Master Servicer or any Subservicer with respect to related Advances, Servicing Advances, Subservicer Servicing Advances or expenses as to which Master Servicer or any Subservicer is entitled to reimbursement thereunder but which have not been previously reimbursed. With respect to each Mortgage Loan for which Master Servicer has forgiven the payment of any principal, the amount of such forgiven principal. With respect to each Mortgage Loan which has become the subject of a Deficient Valuation, the difference between the Stated Principal Balance of the Mortgage Loan outstanding immediately prior to such Deficient Valuation and the Stated Principal Balance of the Mortgage Loan as reduced by the Deficient



EXHIBIT A

(iv) *the hazard insurance policies and Primary Mortgage Insurance Policies, if any, and* certain proceeds thereof.

Uninsured Cause: Any cause of damage to property subject to a Mortgage for which the complete restoration of such property is not fully reimbursable by the hazard insurance.

United States Person: A citizen or resident of the United States, a corporation, partnership or other entity created or organized in, or under the laws of, the United States, any state thereof or the District of Columbia, or an estate or trust whose income from sources without the United States is includible in gross income for United States federal income tax purposes regardless of its connection with the conduct of a trade or business within the United States.

Voting Rights: The portion of the voting rights of all of the Securities which is allocated to any Security. Ninety-nine percent of all of the Voting Rights shall be allocated among Holders of Securities, respectively, other than the Class R Securities, in proportion to the outstanding Security Principal Balances of their respective Securities; 1% of all Voting Rights shall be allocated to the Holders of the Class R Securities, allocated among the Securities of such Class in accordance with their respective Percentage Interests.

http://www.certsystems.net

## ARTICLE II

## CONVEYANCE OF MORTGAGE LOANS; ORIGINAL ISSUANCE OF SECURITIES

Section 2.01. Conveyance of Mortgage Loans.

(a) Depositor, concurrently with the execution and delivery hereof, does hereby assign to Trustee without recourse all the right, title and interest of Depositor in and to the Mortgage Loans, including all interest and principal received on or with respect to the Mortgage Loans after the Cut-off Date (other than payments of principal or interest due on the Mortgage Loans on or before the Cut-off Date) and any and all other property described in Section 2.01(e)(I) through (IV) herein.

(b) In connection with such assignment, except as set forth in Section 2.01(c) below, Depositor does hereby deliver to and deposit with Trustee or Custodian, as applicable, the following documents and instruments (or copies thereof as permitted by this Section):

(i) The original Mortgage Note, endorsed without recourse to the order of Trustee and showing an unbroken chain of endorsements (and/or certificates of corporate succession) from the originator thereof to the Person endorsing it to Trustee;

(ii) The original or a true and correct copy of the Mortgage with evidence of recording indicated thereon;

(iii) An original Assignment to Trustee or a copy of such assignment;



EXHIBIT A

(iv) Either (A) the form or forms of the assignment of the Mortgage used to assign the Mortgage from the originator thereof to the Person assigning it to Trustee and an Officer's Certificate of Depositor stating that such assignments have been executed or (B) a certificate of Depositor's corporate succession to the rights of the originator of the Mortgage;

(v) The original of each modification or assumption agreement, if any, relating to such Mortgage Loan or a copy of each modification or assumption agreement certified, if recorded, by the public recording office in which such document has been recorded, in each case as identified on the Mortgage Loan Schedule.

The Trustee is authorized, with the Master Servicer's consent, to appoint any bank or trust company approved by each of the Depositor and the Master Servicer as custodian of the documents or instruments referred to above in this Section 2.01(a), and to enter into a custodial agreement for such purpose.

(c) On the Closing Date, the Custodian shall certify in the form attached as Exhibit D that, on behalf of the Trustee, it has in its possession for the benefit of the Trustee an original or copy of each of the documents referred to in Section 2.01(b)(i) through (v) except as identified in a schedule of exceptions attached to such certificate; provided, however, that Depositor shall have until September 19, 2002, to endorse the Mortgage Notes to the order of Trustee pursuant to Section 2.01(b)(i).

(d) In the event that in connection with any Mortgage Loan, Depositor cannot deliver the Mortgage, any modification, or assumption agreement (or copy thereof certified by the public recording office) with evidence of recording thereon concurrently with the execution and delivery of this Agreement solely because of a delay caused by the public recording office where such Mortgage, modification, or assumption agreement as the case may be, has been delivered for recordation, Depositor shall deliver or cause to be delivered to Trustee or Custodian a true and correct photocopy of such Mortgage, modification, or assumption agreement.

If any Assignment is lost or defective, Depositor shall prepare a substitute Assignment or cure such defect. Neither Trustee nor Depositor shall be required to record any Assignment. While the Custodial Agreement is in effect, references to the Trustee in this Agreement shall be deemed to refer to the Custodian (as defined in that agreement) to the extent that such references relate to the obligations of such custodian.

(e) It is the express intent of the parties hereto that the conveyance of the Mortgage Loans by Depositor to Trustee as provided in this Agreement be, and be construed as, a sale of the Mortgage Loans by Depositor to Trustee. It is, further, not the intention of the parties that such conveyance be deemed a grant of a security interest in the Mortgage Loans by Depositor to Trustee to secure a debt or other obligation of Depositor. However, in the event, notwithstanding the intent of the parties, the Mortgage Loans are held to be property of Depositor, or if for any reason this Agreement is held or deemed to create a security interest in the Mortgage Loans, then, (a) this Agreement shall also be a security agreement within the meaning of Article 9 of the Uniform Commercial Code in effect in the applicable state; and (b) the conveyance provided for in this Agreement shall be a grant by Depositor to



http://StopForeclosureFraud.com

EXHIBIT A

Exhibit J

FannieMae

Search news, documents, site cont

Funding the Market | Homeowners & Communities | Economic & Strategic Research

# Fannie Mae Charter

ShareTl

## About Us

Company Overview
Governance
Guidelines
Fannie Mae Charter
Board of Directors
Committees
Committee Charters
Code of Conduct
Bylaws
Contacting the Board of Directors
Housing Reports
Media
FM Commentary
Investor Relations
Suppliers
Careers

Fannie Mae was chartered by Congress in 1938 to support liquidity, stability, and affordability in the secondary mortgage market, where existing mortgage-related assets are purchased and sold. Our charter does not permit us to originate loans or lend money directly to consumers in the primary mortgage market.

Our most significant activities are securitizing mortgage loans originated by lenders into Fannie Mae mortgage-backed securities – which we call Fannie Mae MBS – and purchasing mortgage loans and mortgage-related securities for our mortgage portfolio. We obtain funds to purchase mortgage-related assets for our mortgage portfolio by issuing a variety of debt securities in the domestic and international capital markets. We also make other investments that increase the supply of affordable housing.

Federal National Mortgage Association Charter Act (PDF)
(As Amended Through July 30, 2008)

Page last revised: 07/31/15

EXHIBIT A

# Servicing Guide

**Published December 16, 2015**

› Guide Table of Contents

## A1-3-02: Fannie Mae-Initiated Repurchases, Indemnifications, Make W Requests and Deferred Payment Obligations (12/16/2015)

This topic contains the following:

Overview of Fannie Mae-Initiated Repurchases, Indemnifications, and Make Whole Payment Requ
Servicing Defect Remedies Framework ›
Repurchase, Indemnification, or Make Whole Payment Requests Response Time Frames and Ap
Repurchase as a Result of Mortgage Insurance Coverage Violations ›
Mandatory Repurchase of Certain MBS Mortgage Loans ›
Calculating Repurchase Proceeds ›
Alternatives to Repurchase ›
Deferred Payment Obligations (DPO) ›
Calculation of Indemnification Claim for Loss of Mortgage Insurance Benefits ›

Search guide content

BACK TO PART A ›

### Overview of Fannie Mae-Initiated Repurchases, Indemnifications, and Make Whole Pa

Fannie Mae may, in addition to any other remedy available at law or in equity, require a party responsible fo compensatory fee, repurchase Fannie Mae's interest in a mortgage loan, remit a make whole payment, or i Fannie Mae harmless for any loss or damages. If Fannie Mae, in its discretion, determines that a breach of obligations may be reasonably corrected, Fannie Mae will provide the seller/servicer an opportunity to corre specified time frame and manner as specified in the Guides, if any. Fannie Mae will strive to apply the most commensurate with the associated level of risk to compensate Fannie Mae for the harm caused by the viola

Subject to *Servicing Defect Remedies Framework* for servicing defects attributable to servicing violations, F repurchase of a mortgage loan (or of an acquired property) or the remittance of a make whole payment for limited to

- the breach of any contractual warranty (including instances of fraud or misrepresentation),
- under the terms of any applicable repurchase agreement or contract provisions, or
- because of an uncorrected servicing defect.

Additionally, Fannie Mae requires some repurchases because the terms under which the mortgage loans w securitized call for a repurchase under certain conditions or circumstances. Repurchases that fall into this c but are not limited to, Charter violations, an ARM loan in an MBS pool that has converted to a fixed rate mo borrower's exercise of its option in the mortgage loan documents, or an MBS mortgage loan that has 24 pa

The Lender Contract provides remedies to Fannie Mae for the seller/servicer's nonperformance. Any remec Fannie Mae's sole judgment, be commensurate with the associated level of risk.

Following the repurchase of any mortgage loan, losses are the responsibility and legal obligation of the resp modified mortgage loans, the responsible party must comply with all legal obligations in connection with the any legal obligation to pay a borrower any earned "pay for performance" incentives.

EXHIBIT A

Exhibit L

**COMBINED NOTICE - MAILING**
**CRS §38-38-103 FORECLOSURE SALE NO. A2015[illegible]**

To Whom It May Concern: This Notice is given with regard to the following described Deed of Trust:

On May 18, 2015, the undersigned Public Trustee caused the Notice of Election and Demand relating to the Deed of Trust [illegible] Adams records.

| | |
|---|---|
| Original Grantor(s) | Derrick L Tadlock and Cheryl Marie Tadlock |
| Original Beneficiary(ies) | World Savings Bank, FSB |
| Current Holder of Evidence of Debt | Wells Fargo Bank, N.A. |
| Date of Deed of Trust | July 13, 2000 |
| County of Recording | Adams |
| Recording Date of Deed of Trust | July 17, 2000 |
| Recording Information (Reception No. and/or Book/Page No.) | C0690550 Book: 6191 Page: 0219-0232 |
| Original Principal Amount | $398,400.00 |
| Outstanding Principal Balance | $236,514.16 |

Pursuant to CRS §38-38-101(4)(i), you are hereby notified that the covenants of the deed of trust have been violated as follows: failure to pay principal and interest whe due together with all other payments provided for in the evidence of debt secured by the deed of trust and other violations thereof.

**THE LIEN FORECLOSED MAY NOT BE A FIRST LIEN.**

LOT 2, PEAK VIEW ESTATES, COUNTY OF ADAMS, STATE OF COLORADO.

**Also known by street and number as: 13961 Downing St, Brighton, CO 80601.**

**THE PROPERTY DESCRIBED HEREIN IS ALL OF THE PROPERTY CURRENTLY ENCUMBERED BY THE LIEN OF THE DEED OF TRUST.**

**NOTICE OF SALE**

The current holder of the Evidence of Debt secured by the Deed of Trust, described herein, has filed Notice of Election and Demand for sale as provided by law and in s Deed of Trust.

THEREFORE, Notice Is Hereby Given that I will at public auction, at 10:00 AM on Wednesday, 09/16/2015, at 4430 S. Adams County Pkwy, Suite W1000, Brighton C 80601-8217, sell to the highest and best bidder for cash, the said real property and all interest of the said Grantor(s), Grantor(s)' heirs and assigns therein, for the purpose of paying the indebtedness provided in said Evidence of Debt secured by the Deed of Trust, plus attorneys' fees, the expenses of sale and other items allowed by law, anc will issue to the purchaser a Certificate of Purchase, all as provided by law.

| | |
|---|---|
| First Publication | 7/22/2015 |
| Last Publication | 8/19/2015 |
| Name of Publication | Metro West (Brighton Standard Blade) |
| Number of Copies | 18 |

**NOTICE OF RIGHTS**

YOU MAY HAVE AN INTEREST IN THE REAL PROPERTY BEING FORECLOSED, OR HAVE CERTAIN RIGHTS OR SUFFER CERTAIN LIABILITIES PURSUANT TO COLORADO STATUTES AS A RESULT OF SAID FORECLOSURE. YOU MAY HAVE THE RIGHT TO REDEEM SAID REAL PROPERTY OR YOU MAY HAVE THE RIGHT TO CURE A DEFAULT UNDER THE DEED OF TRUST BEING FORECLOSED. A COPY OF SAID STATUTES, AS SUCH STATUTES ARE PRESENTLY CONSTITUTED, WHICH MAY AFFECT YOUR RIGHTS SHALL BE SENT WITH ALL MAILED COPIES OF THIS NOTICE. HOWEVER, YOUR RIGHTS MAY BE DETERMINED BY PREVIOUS STATUTES.

- **A NOTICE OF INTENT TO CURE FILED PURSUANT TO SECTION 38-38-104 SHALL BE FILED WITH THE PUBLIC TRUSTEE AT LEAST FIFTEEN (15) CALENDAR DAYS PRIOR TO THE FIRST SCHEDULED SALE DATE OR ANY DATE TO WHICH THE SALE IS CONTINUED;**
- **A NOTICE OF INTENT TO REDEEM FILED PURSUANT TO SECTION 38-38-302 SHALL BE FILED WITH THE PUBLIC TRUSTEE NO LATER THAN EIGHT (8) BUSINESS DAYS AFTER THE SALE;**
- **IF THE SALE DATE IS CONTINUED TO A LATER DATE, THE DEADLINE TO FILE A NOTICE OF INTENT TO CURE BY THOSE PARTIES ENTITLED TO CURE MAY ALSO BE EXTENDED;**
- **IF THE BORROWER BELIEVES THAT A LENDER OR SERVICER HAS VIOLATED THE REQUIREMENTS FOR A SINGLE POINT OF CONTACT IN SECTION 38-38-103.1 OR THE PROHIBITION ON DUAL TRACKING IN SECTION 38-38-103.2, THE BORROWER MAY FILE A COMPLAINT WITH THE COLORADO ATTORNEY GENERAL, THE FEDERAL CONSUMER FINANCIAL PROTECTION BUREAU (CFPB), OR BOTH. THE FILING OF A COMPLAINT WILL NOT STOP THE FORECLOSURE PROCESS.**

| | |
|---|---|
| **Colorado Attorney General** | **Federal Consumer Financial Protection Bureau** |
| **1300 Broadway, 10th Floor** | **P.O. Box 4503** |
| **Denver, Colorado 80203** | **Iowa City, Iowa 52244** |
| **(800) 222-4444** | **(855) 411-2372** |
| www.coloradoattorneygeneral.gov | www.consumerfinance.gov |

DATE: 05/18/2015

Susan A. Orecchio, Public Trustee in and for the County of Adams, State of Colorado

PUBLIC TRUSTEE COUNTY OF ADAMS COLORADO

By: Public Trustee

The name, address, business telephone number and bar registration number of the attorney(s) representing the legal holder of the indebtedness is:
Joan Olson #28078
McCarthy & Holthus, LLP 7700 E. Arapahoe Road, Suite 230, Centennial, CO 80112 (877) 369-6122
Attorney File # CO-14-645955-JS
The Attorney above is acting as a debt collector and is attempting to collect a debt. Any information provided may be used for that purpose.

EXHIBIT A

Exhibit M

**COMBINED NOTICE - MAILING**
**CRS §38-38-103 FORECLOSURE SALE NO. A201575524**

To Whom It May Concern: This Notice is given with regard to the following described Deed of Trust:

On May 18, 2015, the undersigned Public Trustee caused the Notice of Election and Demand relating to the Deed of Trust described below to be recorded in the County of Adams records.

| | |
|---|---|
| Original Grantor(s) | Derrick L Tadlock and Cheryl Marie Tadlock |
| Original Beneficiary(ies) | World Savings Bank, FSB |
| Current Holder of Evidence of Debt | Wells Fargo Bank, N.A. |
| Date of Deed of Trust | July 13, 2000 |
| County of Recording | Adams |
| Recording Date of Deed of Trust | July 17, 2000 |
| Recording Information (Reception No. and/or Book/Page No.) | C0690550 Book: 6191 Page: 0219-0232 |
| Original Principal Amount | $398,400.00 |
| Outstanding Principal Balance | $236,514.16 |

Pursuant to CRS §38-38-101(4)(i), you are hereby notified that the covenants of the deed of trust have been violated as follows: failure to pay principal and interest when due together with all other payments provided for in the evidence of debt secured by the deed of trust and other violations thereof.

**THE LIEN FORECLOSED MAY NOT BE A FIRST LIEN.**

**LOT 2, PEAK VIEW ESTATES, COUNTY OF ADAMS, STATE OF COLORADO.**

**Also known by street and number as: 13961 Downing St, Brighton, CO 80601.**

**THE PROPERTY DESCRIBED HEREIN IS ALL OF THE PROPERTY CURRENTLY ENCUMBERED BY THE LIEN OF THE DEED OF TRUST.**

**NOTICE OF SALE**

The current holder of the Evidence of Debt secured by the Deed of Trust, described herein, has filed Notice of Election and Demand for sale as provided by law and in said Deed of Trust.

THEREFORE, Notice Is Hereby Given that I will at public auction, at 10:00 AM on Wednesday, 10/28/2015, at 4430 S. Adams County Pkwy, Suite W1000, Brighton CO 80601-8217, sell to the highest and best bidder for cash, the said real property and all interest of the said Grantor(s), Grantor(s)' heirs and assigns therein, for the purpose of paying the indebtedness provided in said Evidence of Debt secured by the Deed of Trust, plus attorneys' fees, the expenses of sale and other items allowed by law, and will issue to the purchaser a Certificate of Purchase, all as provided by law.

| | |
|---|---|
| First Publication | 7/22/2015 |
| Last Publication | 8/19/2015 |
| Name of Publication | Metro West (Brighton Standard Blade) |
| Number of Clips | 18 |

**NOTICE OF RIGHTS**

YOU MAY HAVE AN INTEREST IN THE REAL PROPERTY BEING FORECLOSED, OR HAVE CERTAIN RIGHTS OR SUFFER CERTAIN LIABILITIES PURSUANT TO COLORADO STATUTES AS A RESULT OF SAID FORECLOSURE. YOU MAY HAVE THE RIGHT TO REDEEM SAID REAL PROPERTY OR YOU MAY HAVE THE RIGHT TO CURE A DEFAULT UNDER THE DEED OF TRUST BEING FORECLOSED. A COPY OF SAID STATUTES, AS SUCH STATUTES ARE PRESENTLY CONSTITUTED, WHICH MAY AFFECT YOUR RIGHTS SHALL BE SENT WITH ALL MAILED COPIES OF THIS NOTICE. HOWEVER, YOUR RIGHTS MAY BE DETERMINED BY PREVIOUS STATUTES.

- **A NOTICE OF INTENT TO CURE FILED PURSUANT TO SECTION 38-38-104 SHALL BE FILED WITH THE PUBLIC TRUSTEE AT LEAST FIFTEEN (15) CALENDAR DAYS PRIOR TO THE FIRST SCHEDULED SALE DATE OR ANY DATE TO WHICH THE SALE IS CONTINUED;**
- **A NOTICE OF INTENT TO REDEEM FILED PURSUANT TO SECTION 38-38-302 SHALL BE FILED WITH THE PUBLIC TRUSTEE NO LATER THAN EIGHT (8) BUSINESS DAYS AFTER THE SALE;**
- **IF THE SALE DATE IS CONTINUED TO A LATER DATE, THE DEADLINE TO FILE A NOTICE OF INTENT TO CURE BY THOSE PARTIES ENTITLED TO CURE MAY ALSO BE EXTENDED;**
- **IF THE BORROWER BELIEVES THAT A LENDER OR SERVICER HAS VIOLATED THE REQUIREMENTS FOR A SINGLE POINT OF CONTACT IN SECTION 38-38-103.1 OR THE PROHIBITION ON DUAL TRACKING IN SECTION 38-38-103.2, THE BORROWER MAY FILE A COMPLAINT WITH THE COLORADO ATTORNEY GENERAL, THE FEDERAL CONSUMER FINANCIAL PROTECTION BUREAU (CFPB), OR BOTH. THE FILING OF A COMPLAINT WILL NOT STOP THE FORECLOSURE PROCESS.**

**Colorado Attorney General**
**1300 Broadway, 10th Floor**
**Denver, Colorado 80203**
**(800) 222-4444**
**www.coloradoattorneygeneral.gov**

**Federal Consumer Financial Protection Bureau**
**P.O. Box 4503**
**Iowa City, Iowa 52244**
**(855) 411-2372**
**www.consumerfinance.gov**

DATE: 05/18/2015

Susan A. Orecchio, Public Trustee in and for the County of Adams, State of Colorado

Susan A Orecchio

By: Public Trustee

PUBLIC TRUSTEE COUNTY OF ADAMS COLORADO

EXHIBIT A

Exhibit N

WELLS FARGO



# Wells Fargo Reaches Agreement Resolving Fannie Mae Repurchase Demands on Loans Originated Prior to 2009

DES MOINES, Iowa - December 30, 2013

Wells Fargo & Co. (NYSE:WFC) announced today that the Company has reached an agreement with the Federal National Mortgage Association (Fannie Mae) that resolves substantially all repurchase liabilities related to loans sold to Fannie Mae that were originated prior to Jan. 1, 2009.

The $591 million agreement was adjusted for credits related to certain prior repurchases, resulting in a one-time cash payment to Fannie Mae of approximately $541 million. At Sept. 30 2013, Wells Fargo had fully accrued for the cost of the agreement.

**About Wells Fargo**
Wells Fargo Home Mortgage is the nation's leading mortgage lender and services one of every six mortgage loans in the nation. A division of Wells Fargo Bank, N.A., it has a national presence in mortgage stores and banking stores, and also serves the home financing needs of customers nationwide through its call centers, Internet presence and third-party production channels. Wells Fargo Bank, N.A. is an equal housing lender.

Wells Fargo & Company (NYSE: WFC) is a nationwide, diversified, community-based financial services company with $1.5 trillion in assets. Founded in 1852 and headquartered in San Francisco, Wells Fargo provides banking, insurance, investments, mortgage, and consumer and commercial finance through more than 9,000 stores, 12,000 ATMs, and the Internet (wellsfargo.com), and has offices in more than 35 countries to support the bank's customers who conduct business in the global economy. With more than 270,000 team members, Wells Fargo serves one in three households in the United States. Wells Fargo & Company was ranked No. 25 on *Fortune*'s 2013 rankings of America's largest corporations. Wells Fargo's vision is to satisfy all our customers' financial needs and help them succeed financially. Wells Fargo perspectives are also available at blogs.wellsfargo.com.

**Media**
Catherine Pulley
**917-260-1673**

**Investors**
Jim Rowe
**415-396-8216**

Related topics: News Releases

© 1999 - 2016 Wells Fargo. All rights reserved. NMLSR ID 399801